WILLIAM AND JAMES W. SMITH *v.* HENRY COE, IMPLEADED WITH JOSEPH NAYLOR.

N. agreed for a specified sum to erect a building for C. No plans or specifications were settled upon. From the commencement of the work to its completion, the contract had been, by mutual consent, so substantially and materially departed from that it was impossible, from the evidence at the trial, to ascertain the extent of the alterations in the contract, which was originally intended to control in the erection of the building.

*Held*, that the case should be regarded as one where it had been shown that the building was erected under a general employment, and in respect to which the owner was under an implied obligation to pay what the work and materials were reasonably worth.

Parties furnishing labor or materials towards the erection of a building under such a general employment, may acquire a lien under the mechanics' lien law, for the value of such materials and labor.

When a party agrees to erect a building in a specified manner, whether the sum to be paid for it is agreed upon or not, if he abandons the work before its com pletion he can recover nothing.

Or if he fails to construct a building in every essential particular in accordance with the contract, unless performance is waived by the other party, he cannot recover.

The use or occupation of the building by the owner will not be deemed a waiver of performance of the contract, so as to authorize an action to be maintained upon it by the builder.

A substantial compliance with the terms and conditions agreed upon for the con struction of the building, is a condition precedent to the right of the builder to maintain an action upon the contract.

It is essential to the establishment of a mechanic's lien upon premises, that at the time of filing the notice thereof, there was actually due or owing from the owner to the original contractor, upon his contract, a greater sum than the amount of the lien claimed.

Smith v. Coe.

The lien creditor succeeds only to the rights and claims which, at the time of filing the notice, are possessed by the original contractor, and unless such facts are established as would, in a proper action, entitle the original contractor to recover, the lien creditor cannot.

*It seems* that if the original contractor and the owner should make a fraudulent settlement for the purpose of depriving parties furnishing labor or materials of any lien therefor, the court would disregard it.

APPEAL by the defendant Coe from a judgment entered against him at special term in favor of the plaintiffs. The action was brought under the mechanics' lien law to foreclose a lien acquired by filing a notice thereof on September 24th, 1857, upon the ground that the plaintiffs had, at the request of Naylor, furnished materials which were used in the construction of a building belonging to the defendant Coe, and erected for him by Naylor under the following contract:

"I agree to erect a building on the lots corner of East and Cherry streets, as per plans and specifications, bearing this date, and signed by me and Henry Coe; and agree to make any alterations that may be suggested by him, (provided the additional expense of the said alterations does not exceed three hundred dollars), and finish the same under the directions of Henry Coe, in a good and workmanlike manner, and of the best materials, for the sum of fourteen thousand dollars, payable as follows: When the materials are delivered on the ground, and a receipted bill of the same is handed over, then the same will be paid to the sellers of said materials to the extent of nine thousand dollars in cash, and the balance when the whole building is finished in every respect, and the same is ascertained to be free from any or all claims of any kind for labor or materials, then the store No. 14 Moore street, is to be conveyed (subject to a mortgage of $3,850,) to J. Naylor, or his assigns, as payment in full for the remaining five thousand dollars.

NEW YORK, 28th May, 1857.

JOSEPH NAYLOR.

Witness—CHAS. A. COE.

"I agree to make an additional story on the building now being erected by me on the lots corner of East and Cherry streets, so that the whole will ·be three stories high, and on a level with the floors of store 755 Water street, and finish the same, under the directions of Henry Coe, in a good and workmanlike manner, and of the best materials, for the sum of five thousand five hundred dollars, (making the whole cost of building when completed, $19,500), payable as follows: When the materials are placed on the ground, one-half, or $2,750, and when the roof is on and tinned, the rest, or $2,750.

NEW YORK, 7th July, 1857.

JOSEPH NAYLOR."

The defendant Coe answered, and alleged that the building was erected under these contracts; that he had paid Naylor the $19,500 therein mentioned, and also the sum of $3,563.76 for extra work, independent of the contracts, and that at the time of filing the notice of lien, or since, no sum of money whatever was due, or to become due, to Naylor, on account of the erection of the building. Also, that on August 29th, 1857, Naylor failed to complete his contracts and abandoned the work—the building being then in an unfinished state—and that the defendant Coe had been compelled to complete the same at an additional expense of about $1,500.

The action was tried before Judge DALY, without a jury, who found, as matter of fact: That on the 24th of September, 1857, the day the lien was filed, there was due from the defendant Coe to the defendant Naylor, a larger sum than the plaintiffs demand; and, as a conclusion of law, that there was due to the plaintiffs the sum of $1,737.53, with interest from the twentieth day of August, 1857, for which sum the plaintiffs had a lien upon said premises; to which several and respective findings, of fact and of law, the defendant Coe excepted.

The testimony at the trial, as shown by the printed case, was not only conflicting in its essential parts, but in addition was quite indefinite, so as to be almost unintelligible, arising from the

inconsistent statements of the principal witnesses. Judge DALY, in his opinion, has so fully commented upon these things, and the other opinions give such comments upon the facts proven, that it is unnecessary here to do more than to refer to them for all the particular information which may be needed for a complete understanding of the case.

*William Curtis Noyes and Hoffman & Pirsson,* for the appellants.

I. Naylor was the only witness to prove the indebtedness and his compliance with the terms of the contract; but he was utterly discredited, and his testimony should have been disregarded. 1. On the 17th August, 1857, he gave a receipt in full for all work which he does not explain, and yet he pretends to claim a large sum still due him. 2. He subsequently swore, on an examination in a proceeding supplementary to an execution against him, that nothing was due him from Coe. This was on the 15th September, 1857. 3. He also agreed to accept, and did accept, $22,500 in full.

II. This receipt was given and the deposition made before the lien was filed, and before any claim of the plaintiffs attached, and such a receipt cannot be annulled or set aside in this indirect mode by a proceeding under the lien law, without any pleadings or preliminary allegations impeaching its validity.

III. But the contractor, Naylor, was not entitled to anything, as he admitted he had been paid $23,000, which was more than the contract called for, being $19,500, for he had never finished the building. In fact, he was paid over $25,000, and then he *abandoned* the building nearly a month before the lien was filed. Even, therefore, if he had done *extra work* by the express or implied permission of Coe, this only made such extra work an addition to the work called for by the contracts, and upon well settled principles he could recover nothing, either for the original or the extra work, until his entire contract was performed, which has never been done. *Pullman v. Corning,* 14 Barb. 174; *S. C.,* affirmed, 5 Selden, 93.

*Thomas C. Fields,* for the respondents.

DALY, First Judge.—In the law, as laid down by my brother HILTON, I fully concur. I differ only as to its application to the facts of this case. I agree that if Naylor entered into a special contract with the defendant Coe, to erect a building of a certain kind or description for $19,500, that he was fully paid before the plaintiffs filed their lien, and that nothing would be due from Coe to Naylor, to which the plaintiffs' lien could attach; or that if Naylor agreed to erect a building in a specified manner, whether the sum he was to receive for it was agreed upon or not, and abandoned the work before it was completed, that he could recover nothing. Whatever doubts may have previously existed upon the point, it is now settled to be the law of this state, (*Smith v. Brady,* 17 N. Y. Rep. (3 Smith,) 173), that if a contract is entered into for the erection of a building, in which the nature of the structure and the materials of which it is to be composed are agreed upon and specified, that the builder must perform his contract in every essential particular, unless performance is waived by the other party. That the use or occupation of the building by the owner will not be deemed a waiver, or such an acceptance of the building as will entitle the builder to sue upon the contract, leaving the owner to deduct his damages from the contract price, but that a substantial performance, according to the terms and conditions agreed upon, is a condition precedent to the builder's right to maintain an action upon the contract. "Every one," says COMSTOCK, J., "has a right to build his house, his cottage or his store, after such model and in such style as shall best accord with his notions of utility, or be most agreeable to his fancy. The specifications of the contract become the law between the parties until voluntarily changed. If the owner prefers a plain and simple Doric colum, and has so provided in the agreement, the contractor has no right to put in its place the more costly and elegant Corinthian. If the owner, having regard to strength and durability, has contracted for walls of specified materials to be laid in a particular manner, or for a given

number of joists and beams, the builder has no right to substitute his own judgment or that of others.   Having departed from the agreement, if performance has not been waived by the other party, the law will not allow him to allege that he has made as good a building as the one he engaged to erect.   He can demand payment only upon and according to the terms of his contract, and if the conditions on which payment is due have not been performed, then the right to demand it does not exist."

This rule, which denies to the contractor who abandons the work before he has completed it, or who in completing it has substantially departed from what was agreed upon, any remuneration for what he has done, is one in respect to which great diversity of opinion has existed.   And the obligation, in such a case, of the party who has the possession and enjoyment of the labor and materials of another, to make at least some compensation for what he has received, after a full and liberal allowance has been made to him for any damage he may have sustained by the non-performance of the contract in its entirety, has been recognized and upheld by the judicial tribunals of Massachusetts and New Hampshire.   *Hayward* v. *Leonard*, 7 Pick. 181; *Smith* v. *First Congregational Meeting House in Lowell*, 8 id. 178; *Britton* v. *Turner*, 6 N. H. 481.   The more rigid rule, to which we have adhered in this state, has its foundation in the policy of securing the full and faithful performance of contracts where the contract clearly and expressly specifies what is to be done, for the reason that a more lax and less rigid rule would afford encouragement to parties to abandon, or execute, their contracts as their interest or caprice dictated; and though it may inflict upon the defaulting contractor a very heavy pecuniary punishment, by giving to the other party what the contractor has done, without paying anything for it, still that consideration is unimportant, weighed against its healthy and beneficial effect as a general rule.

The rule, however, can be applied only in cases where a special contract has been entered into, and the distinction in the present case is, that the contract under which Coe and Naylor acted cannot be regarded as a special one as respects the nature

of the building to be erected, the materials of which it was to be composed, or as to the amount which Coe was to pay. The case, as settled, is but a very imperfect statement of the evidence which appeared upon the trial, as I took it for granted, in settling it, that the plaintiff had, in his amendments, embraced all that he considered material, and I looked no farther than to see whether the amendments objected to were correct. Still, imperfect as the case is, it sufficiently discloses, for the purposes of this review, what the nature of the contract was, and that it cannot be regarded as defining the plan of the building, the materials that were to be used in its construction, or as fixing the amount ultimately to be paid.

On the 28th of May, 1857, Naylor agreed in writing, to erect a building as per plans and specifications signed by him and Coe, to be finished, *under the directions of Coe*, in a good and workmanlike manner and of the best materials, for $14,000, Coe to pay for the materials to the seller as the same were delivered at the building, to the extent of $9,000, and when the building was finished, Coe was to convey the store 14 Moore street to Naylor, subject to a mortgage of $3,850, as payment in full for the remaining $5,000. Naylor further agreed to make any alterations suggested by Coe, provided the expense did not exceed $300. Though the contract refers to the plans and specifications signed by Coe and Naylor, contemporaneously with the making of the written agreement, no plans or specifications were signed. Specifications in writing, bearing the same date as the written agreement, and to which the name of the defendant's brother as a witness was attached, were read in evidence; and which the brother Charles Coe testified were specifications drawn up by the defendant, and on which the contract was based. Naylor admitted that a specification was shown to him at the time of the making of the contract, that one was given to him at that time, which was lost, and that he might have seen the specifications exhibited in court before, but that he never signed any specifications or worked by any; that he was to draw a specification to work by, which was to be given to Coe, but that he never drew one. The defendant's

brother testified that the reason why Naylor did not sign the specifications was, that one or two alterations were made, and Naylor wanted a fair copy. Conceding, upon this testimony, that the specification exhibited in court was the one referred to in the written agreement, that it was delivered to and accepted by Naylor, as constituting a part of the agreement then made, it is apparent upon the mere inspection of it, that without the plans it furnishes no guide, as to the nature of the structure to be erected. It was drawn by the defendant, and is entitled specification of carpenter's work and materials required to build a *two story storehouse*, corner of East and Cherry streets. It provides for the thickness of the walls, but their heighth or the dimensions of the building, the number of openings, such as windows, &c., are unascertainable without the plans. It is specific as to certain materials to be used, and silent as to others. It does not appear whether the building is to be of brick or of stone. It is not only defective in omitting to specify some of the most essential of the materials, but in matters where it is specific, it has, under the direction and assent of the defendant, been so materially departed from in the use of materials and in other matters in which it is specific, that I came to the conclusion that whatever may have been the understanding of the parties when this specification was drawn, whether they intended or not that it was to form part of the written agreement of the 28th of May, 1857, when that agreement was signed by Naylor, that it was very clear that neither party regarded this specification as controlling or as binding upon either, but that the building, materially altered from the first design or intention, whatever that was, was carried on by Naylor under the direction of Coe, so as to become, both as to the nature of the structure and in the cost and expense of building it, something very different from what either party had in view when Naylor signed the agreement of the 28th of May, 1857.

About a month after that agreement was made, that is, on the 7th of July, an important change was made—the addition of another story—by which the building was made three stories in heighth. This Naylor agreed, in writing, to do in a workman-

like manner, and of the best materials, for $5,500; making in all, as he expressed it in the writing, for the whole cost of the building, when completed, $19,500; one half of the additional $5,500 to be paid when the materials were placed on the ground, and the other half when the roof was on and tinned. This writing might be regarded as a distinct understanding and agreement, on the part of Naylor, as to what the cost of the whole building was to be, or as to what he had agreed to erect it for; and if I could have said, upon the evidence, that no alteration or change had been made after that time, but that the building, as then carried forward, and ultimately completed, was exactly what was then intended, or if changed, that the alteration or change had been made by Naylor, without the concurrence or authority of Coe, then I might have held that Naylor was entitled to but $19,500, and had been fully paid that amount. But I would have been entirely unwarranted in drawing any such conclusion from the evidence. Naylor, in his testimony, has enumerated changes that were made in the character of the materials and in the nature of the structure, which, limiting myself to those which I concluded, from the evidence, were made after the agreement for the third story was entered into, involved an additional expense of over $6,000, the last item of which was the difference between spruce instead of hemlock for the roof. Naylor also testified that the difference in cost between the building first contracted to be built and the building as finished, was about $12,000, in consequence of changes made from the original contract. In this he is not contradicted, and we must assume the fact to be true. The specification given in evidence is imperfect, and, without the plans, it is impossible to say what kind of building was contemplated by the original contract, except so far as it is indicated in the testimony. It is this difficulty, the utter impossibility of fixing, by the evidence, upon the kind of building that was to be erected, that leaves this case deficient in an element essential to the existence of a special contract. If we could gather from the written instruments and the oral testimony the exact nature of the building to be erected,

and the kind of materials to be used in its construction, as a thing settled and agreed upon between the parties, we should then have, what does not exist in this case, the proper starting point. That being clearly defined and specified, any additions made would be extra work, the value or cost of which could be added to the contract price, and the matter would be very simple. If the specifications given in evidence by the defendant had been signed by Naylor, they would, as far as they go, be binding upon him; but we have Naylor asserting that the specification handed him at the time of the making of the contract did not call for yellow stone girders, and in his cross-examination, admitting that the paper shown him contained everything in the original specification, but at the same time declaring that alterations commenced from the foundation, that he never paid much attention to the specification, but went on and built the building as Mr. Coe and Mr. Lawrence told him to. That it was built under the directions of Mr. Coe and Mr. Lawrence, and that he told Coe that the building would cost a great deal more as he was going on. That about ten days after he commenced, they objected to the use of old timber, and that after that he went on and built as they directed, and when they gave no directions, he went on and built himself, and that the difference between old and new tim·ber added five thousand dollars to the cost of erection. Coe's brother, however, testified that Naylor could not get yellow pine timber, and asked permission to substitute other timber. That when Naylor commenced putting down the foundation the defendant objected to his putting down old timber, as the specification called for new timber—yellow and Georgia pine—which was not strictly the fact, and that Naylor put down new. This witness also testified that some spruce was used, which was an inferior article, and that the specification called for the best kind of timber of every description—in which he was mistaken, as, with the exception of the seven rows of girders and posts through the first story, which were to be of yellow pine timber, no other timber is mentioned in the specification but good merchantable quality *spruce* timber. This witness was inaccurate in several

other important particulars.   I thought his testimony, upon the whole, very loose and general; and having found him inaccurate in several material points, I did not regard his testimony as controlling upon any point.   But even this witness testified that the contract was varied from before the building was finished; how, or by whom, whether with or without the defendant's consent, he does not state, and I merely refer to it to show that even his testimony is not consonant with the existence of a special contract, the entire performance of which, according to terms stipulated and specified, the defendant has or had a right to exact, but as supporting the theory or conclusion which I arrived at in deciding the case, namely, that whatever may have been the exact understanding of the parties in the beginning, or at any one time, a thing impossible to be determined from the evidence, that it was materially departed from with the full assent, authority and direction of the defendant, so as to leave their contract wanting in those features essential to the existence of a special contract, and which demands for its construction, or for the determination of the rights of the parties under it, a very different rule of law from that which prevails in respect to special contracts.

One important deviation in materials was from spruce to yellow pine timber.   This the defendant's witness, Lawrence, says was agreed to.   It made a difference in the cost, that is, increased it between $1,200 and $1,500.   The building was raised eight feet, which made a difference of $3,500, and made it necessary to give the roof a double pitch, when it was to have but a single pitch.   The specifications are silent as to the kind of brick, the general provision being that "all materials were to be of *good merchantable* qualities."   Naylor intended to use soft brick on the inside of the walls, and had a right to.   There was nothing in the specification to the contrary.   Hard brick was used at an extra cost of $3,000.   Timber for concrete was used at an extra cost of $500 or $600.   These items are referred to, to show how material the deviations were.   In addition to which, there were many things not embraced in the specification, and not necessarily a

part of the contract : such as one thousand feet of railway, $750 ; Croton water introduced, $70 ; and stairway for the hatchway, &c.

Naylor testified, as I have said, that the alterations commenced with the foundation, and how material those alterations, changes and additions were, and how greatly they added to the cost of the structure, is apparent from the testimony. Naylor says that nothing was said about extra work. Coe paid all the bills up to the plaintiff's bill. Every Saturday, Naylor came to the defendant's store with a list of the laborers, and the defendant's brother paid their wages. In this way the work went on, showing that the agreements signed by Naylor, which stipulated as to the mode of payment, were departed from in the beginning. "I was satisfied," says Naylor, " to go on and build as long as Coe paid the bills." And in this way they went on, Naylor following the directions of Coe and Lawrence, and Coe paying all the bills. Under such an arrangement Naylor was little better than a superintendent. He followed whatever directions were given to him, and the means to carry on the work were supplied by Coe, by paying the employees every Saturday night, and paying the bills as they came in. Such a state of things is inconsistent with the supposition that either party acted, or supposed they were acting, under a special contract for a certain thing at a fixed price. The defendant gave the most unequivocal evidence that he did not. According to the written instrument he was to pay $14,500, and only $11,750 of that before the building was finished, as the remaining $2,750 was to be paid when the roof was on and tinned. For the remaining part of the $19,500, he was to convey to Naylor a store, when the building was finished and cleared of all claims for labor, and yet he paid out in cash, while Naylor was in charge of the building, and before it was completed, $23,642, or nearly $10,000 more than Naylor could have demanded under such a contract, and a large excess over the price specified in the writings. This was and is, to my mind, very conclusive, to show that he did not regard himself as limited by that price, but that he clearly recognized his obligation to pay more. My conclusion was, and still is, that he showed, by his

own act, that the original design or intention of the parties had been materially changed in the progress of the erection, and that the sum named in the writings was no longer the fixed or stipulated cost. He evidently regarded the conveyance of the store in Moore street as no longer a feature in the mode of payment, as he had already paid out in cash several thousand dollars more than the whole sum named in the two agreements, including the store, which was to be equivalent to $5,000.

I did not attach much importance to the receipt, except as an acknowledgment that $19,500 was received by Naylor previous to the 17th of August, 1857, because the defendant, by making subsequent payments—payments afterwards to the amount of $4,142—indicated very clearly that he did not regard it as a final settlement. Nor did I hold the statement of Naylor, when examined upon proceedings supplementary to execution, that Coe had not agreed to give him more than $19,500, but that he had hopes that he would give him something more, as conclusive upon the plaintiff in the action. Naylor having testified, it was receivable in evidence, to be weighed in connection with what Naylor testified to on the trial; but the whole evidence in the case was to be taken together; and if the whole evidence taken together established a different state of facts, the plaintiff would not be concluded by any admission made by Naylor.

It was in proof before me, that the mason and carpenter work of the building as finished was worth $29,529.06. I regret that the testimony of the two very competent witnesses, one a superintendent of buildings, and the other a practical mason, by whom this fact was established, has not been fully inserted in the case, that the mode in which they proceeded, and the basis upon which their estimate was made, might fully appear. But the fact stands upon the record, and the defendant did not attempt to controvert or question it. Lawrence, the defendant's witness, testified that the additional work after Naylor left, amounted to $1,000, so that the materials and work then done was of the value of $28,529. The defendant's brother testified that he paid out $25,000, and that defendant paid out, in addition, $1,000 or $2,937 more than

the sum claimed in the answer to have been paid to Naylor for or upon the erection of the building, and which Naylor conceded had been paid, or, as he expressed it, which he did not dispute. If Lawrence was right, there was but $1,000 additional work after Naylor left, and as the work was done under Lawrence's directions and that of the defendant, Lawrence's testimony must be regarded as the most reliable upon that point. I considered it more reliable than any inference to be drawn from the statements of the witness Coe as to payments, or his statement that his brother was obliged to finish the building after Naylor left it, at an additional expense of nearly two thousand dollars, followed as that statement was by another, showing how vague and unreliable were the impressions of the witness, namely, "after we paid him (Naylor) $22,500, and he abandoned the building, the balance of the money" (which would be, according to his statement of payments, $3,500,) " was paid to finish the building and for materials." He differed, moreover, with Lawrence as to the time when Naylor left, putting it nearly a month earlier than the time stated by Lawrence, and having found him inaccurate in many particulars, I regarded Lawrence as the more reliable witness. Coe says that Naylor, after he abandoned, was around the building ; that he ordered materials after he left ; that he saw him, after he abandoned, around the building looking at the men. All of which testimony satisfied me that the abandonment, which the witness referred to, was rather matter of opinion than of knowledge. Lawrence swears that Naylor left the building, to the best of his recollection, *about* the *last* of September. That he was about the building *after* the *last week* in September. Coe swears that he left the foreman to finish, and Naylor positively denies that he ever abandoned the building. My own conclusion was that Naylor was probably away, or was there but little after the time fixed by Lawrence, and that during this time, which must have been short, for Naylor swears the building was finished in the *beginning* of October; that the foreman went on as usual until the building was finished, the defendant paying him and the other workmen. It does not appear that Naylor ever received a dollar. All that

can be gathered from the evidence is, that the defendant's brother paid as the work progressed, upon Naylor sending him the bills, and that Naylor brought him every Saturday night a list of the laborers, and that he paid their wages. If any money was paid except in this way, it does not appear in the evidence. Now assuming that Naylor left when Lawrence thinks he did, about the last of September, and that the work after that, in finishing the building, amounted to $1,000, in what position did the parties stand ? The value of the mason and carpenter work, then, if that included all, which may be doubted, amounted to $29,529.06, and the defendant had paid $23,642. The amount of payments claimed or set up by the answer, is something short of this—$23,063; but $23,642 was the statement given by the defendant to Naylor, and which Naylor admitted on the stand to be correct. I leave out of consideration altogether the statement of Charles Coe, that there were payments to the amount of $26,000, because it was a loose estimate by the witness, in round numbers intrinsically unreliable, and is nearly $3,000 more than is stated or claimed in the answer. Taking $23,642, therefore, as the total amount of payments, it shows an excess of value over payments of $5,887, in which was included the plaintiff's bill of $1,737.53, and the claims of other mechanics, loosely estimated by Naylor at $1,500 ; all of which has gone into the defendant's building, and the benefit of which he claims to enjoy upon the ground that he has shown a special agreement on the part of Naylor to erect the building as it was ultimately finished, for $19,500. I have sufficiently set forth the reasons that show that any such conclusion is wholly inconsistent with the testimony, and that whatever may have been the understanding of the parties when the sum was fixed upon, it was so materially departed from by the erection of a building worth $10,000 more, that it is now utterly impossible, at least upon this evidence, to say what kind of building was agreed upon for $19,500. The defendant, in his answer, admits extra work to the amount of $3,563.76. Extra work must be an addition made to work previously specified and defined, and to know what is extra we must know what was

previously agreed upon, and this I say cannot be gathered from the specifications, the imperfect and defective state of which, from the want of plans and of matters essential to be inserted, I have already pointed out; in addition to which, alterations and changes commenced almost with the foundation of the building. With this important concession by the defendant, that there was extra work, how are we to get at it? If we say that the original understanding was to erect a building for $19,500, and that afterwards, by alterations, changes or additions, a building was put up of the value of $29,529, we may say that the difference was for extra work. But I maintain that nothing of this kind can be predicated upon this evidence, and that the only proper finding upon it is to hold that it does not show what was to be erected for $19,500, and that in that respect it fails to establish the most essential element of a special contract, and in the absence of proof of a special contract, the legal conclusion is an implied obligation on the part of the defendant to pay Naylor whatever the work, materials and services were reasonably worth. I took the estimate of the two experts as establishing the reasonable value of the work and materials to be $29,529.06, and allowing even that the defendant had paid to the full amount stated by his brother, that is $26,000, that he would still be indebted in an amount very much greater than the plaintiff's claim. That upon the points, in conflict between Naylor and the witness Charles Coe, whether or not Naylor abandoned the contract, I came to the conclusion that he did not. That the work was finished by his foreman as fully as if he had been in daily attendance during the short period that elapsed from the time when he was last seen about the building by Lawrence, that is, after the last week in September, and the time when it was completed, stated by him to have been in the beginning of October. That before that period the building was carried on under the direction of Lawrence and the defendant, and that it continued to be carried on in the same way afterwards under Naylor's foreman, until finished; the defendant paying the bills and the workmen, precisely as he had done before, and that there was nothing in these circumstances

establishing that kind of abandonment which forfeits all claim or right to remuneration for what has been done.

I have dwelt at much length upon this case, as it is a peculiar one, and because I feel that the case would be chargeable with injustice if we were to hold that the defendant is to enjoy the benefit of a building which cost nearly $6,000 more to erect than he has paid for it, upon the ground that the evidence shows a special contract to erect it for $19,500, or a building contracted for at $19,500, and augmented by extra work to the amount of $3,563.76, which is the defence set up by the answer. I am for adhering rigidly to the rule which holds parties to the full or substantial performance of their contracts, but the terms and conditions agreed upon must distinctly appear, or the foundation is wanting for the application of the rule. If the defendant desired the advantage or security to be derived from the express stipulations of a special contract, he should have had those stipulations distinctly and clearly expressed before Naylor began to build, so that if any alterations or additions were afterwards made, they would distinctly appear upon reference being had to the original contract. If they were extra work, it could be shown at once by looking at the original agreement, or if substituted for work therein provided for, what was substituted could be compared with what was omitted, and the extent to which the contract was varied, or the effect that the change might have upon the whole contract, would readily appear. It is this want, in the case, that renders it impossible to say what was extra work or what was change or alteration, or to adopt any other rule than the one I have laid down. The defendant has had the benefit of the $1,700 worth of work and materials, furnished by the plaintiffs, in the erection of the building. He has not paid for it. He is indebted at least to that extent, and the plaintiffs having been subrogated to the rights of Naylor, to the extent of their claim, by the filing of his lien, are, in my judgment, entitled to recover that amount from the defendant.

BRADY, J.—This appeal is presented for our consideration on

a case which contains no findings of fact, and which, as appears from the opinion of Judge DALY, does not contain all the evidence given. The action is one in which findings were eminently necessary, for the reason that there is conflict on every material issue, and as to some the weight of evidence is in favor of the unsuccessful party. It would be, doubtless, justifiable under the circumstances, to dismiss the appeal, and I would urge such a course were it not for the labor bestowed upon it by my brethren. Both the parties on the trial seem to have acted on the principle that in obscurity there is safety and must be success, and the result is that neither has given us testimony which is entirely satisfactory either in support of, or in answer to, the claim sought to be maintained. Mr. Naylor's statement is, in some instances, inconsistent and irreconcilable, and in others mysterious and unintelligible; while, on the other hand, the attempted explanations or revelations of the defence are either inconsistent with some prominent theory of the defence, or are entirely insufficient to remove the difficulties against which they are arrayed. By the *written* contracts, Naylor was to receive $19,500 for building a house on lots of the defendant Coe. He says that alterations were made under the directions of Mr. Coe, and that the difference in the cost occasioned by such alterations was about $12,000, or a change from $19,500 to about $29,500. And again, that the expense of the whole structure was about $31,000, and that the bulk of the difference between $24,000 and $31,000 *was due on the 15th September*, 1857. On that day, however, when under examination upon proceedings supplementary to execution, Naylor said: "I have been Mr. Coe's superintendent of building; I was to build for a certain amount, $19,500. He was to pay the bills, and *anything less than that* I would make. It has *already* cost between $23,000 and $24,000; I have hopes he will give me something for my trouble, *but he has not agreed to do so.*" And notwithstanding this statement, he testifies in this case that there was $9,000 due from the defendant Coe to him on the 24th September—or nine days after his examination under supplementary proceedings.

These statements, in my opinion, are irreconcilable with any
other theory than that Mr. Naylor either intended to prevent
his judgment creditor from appropriating the claim against Coe,
or, having no claim in fact against Coe at that time, he has since,
by an extraordinary effort of memory, gathered the details of
the one herein stated.   Again, Naylor swears that he never told
Lawrence or C. A. Coe that if they would pay him $22,500, it
would be in full of all demands on the building and for extra
work, or anything like it, to them or either of them, or to any
one else, and yet Mr. Coe and Mr. Lawrence both swear to
the contrary positively, and of their having made a memo-
randum of Naylor's statement, which he thus denied having
made.   The defendant relied upon the proof of this offer as
controlling, but the payment by him of a sum greater than its
amount shows either that it was not accepted or never made.   I
think the facts and circumstances in relation to it justify either
conclusion, and it must be assumed from the judgment that the
presiding judge gave full credit to the testimony of Naylor,
regarding it not sufficiently impeached by his statement under
proceedings supplementary, and herein mentioned, and by the
evidence on the part of the defence herein given.   Mr. Coe, the
defendant, was not examined.   If he could have thrown any
light on the questions involved, he has not availed himself of
the opportunity, and Mr. Naylor, on the fact of the alterations
having been made and in relation to the cost attending them,
remains not only unimpeached but sustained by the testimony
in the cause.   The testimony on behalf of the defendant Coe
does not explain the manner, mode, or extent of the alleged
alterations, nor does it show the value or cost of them, although
both of these subjects formed a part of the proof made by Nay-
lor.   It would seem from the peculiar complexion, so to speak,
of the defendant's proof, that any allusion to the departures from
the contract which was authorized, and increased the cost of the
building, were avoided as subjects of inquiry.   They may have
been overlooked, but the impression to be received on a careful
perusal of the whole case is apt to be that the defendant chose

to place himself upon the incongruities in Naylor's various statements, and the offer which he herein denies having made. However this may be, giving credit to the testimony of Naylor, I think the plaintiff entitled to recover, unless Naylor, by abandoning the work or failing to perform his contract, nothing was due to him at the time the lien was filed, or became due at any time subsequently. If the testimony of Naylor be received, then it shows such departures from the contract, and such acts and payments in regard to the building, as to justify the conclusion of a total abandonment of the condition or terms of the contract, by which the last payment is made to depend upon the whole building being finished in every respect. But independently of this, the witness Coe, although he states that Naylor abandoned the building about the first of September, says that he was around the building after the 15th, and ordered materials after he left. And further, that he saw Naylor around the building looking at the men after the time mentioned by him as to the abandonment, and that Naylor left his foreman to finish the building. Mr. Coe is not sustained by the witness Lawrence, called for the defence. Lawrence says that Naylor left about the *last* of September, and that he saw Naylor about the building after the *last week in September!* The building was finished in the fore part of October, and Naylor, having been about the building after the last week in September, must have been there in October. Naylor himself says: "I can't say I entirely finished the building." This is not a case, however, on the facts disclosed, whatever may be the fact of abandonment, to which the rule is to be applied that, the contractor having failed to perform his contract, nothing is due. The amount claimed by the contractor is for extra work and materials caused by alterations in the plan of the building, and that there can be no doubt of the character of the work is shown by Naylor's receipt, introduced by the defendant Coe, acknowledging the payment of the contract price or sum, namely, $19,500, in full settlement for building store as *per contract.* From this receipt, it follows, aside from the testimony, that the contract price had been earned and paid,

and the building accepted so far as that price could be applied, and it follows, as well, that the subsequent payments made by the defendant were paid on account of extras. It is no answer to this, that the defendant Coe paid $1,000 to finish the building, because there was due to Naylor a large amount of money for extra work before he left the building, and the money so expended was to complete the extra work. At least, on the evidence, such a presumption is warranted. There is no language used by the witnesses for the defence to the effect that the $1,000 was expended in finishing the building according to the contract, and it seems clear to me that no such statement could be made. This case considered thus, and presenting these varied aspects, it is my opinion that the judgment of the special term should not be disturbed. The plaintiff had made out a *prima facie* case, and although there are objections to the testimony of Naylor, I cannot say, on a consideration of the whole case, that his testimony should be discarded.

HILTON, J., (dissenting).—Naylor agreed, by his contract of May 28th, 1857, to erect a building for Coe at the corner of East and Cherry streets, in this city, according to certain plans and specifications referred to, and which he says were given him at the time, (but were, however, never signed), for the price of $14,000, payable as follows: $9,000 to be paid to sellers of the materials to be used, as the same should be delivered upon the ground, and a receipted bill handed over. The remaining $5,000 when the whole building was finished in every respect, and the same ascertained to be free from claims of any kind for labor or materials; and to be paid by conveying the store No. 14 Moore street to Naylor, subject to a mortgage for $3,850. By a subsequent agreement between the parties, bearing date July 7, 1857, an additional story was to be put on the building, to be finished under the directions of Coe, for the sum of $5,500, " (making the whole cost of the building, when completed, $19,500,) payable as follows: When the materials are placed on the ground $2,750, and when the roof is on and tinned, the rest, or $2,750." By

the first contract, it was expressly agreed on the part of Naylor, to make any alterations that might be suggested to him, (provided the additional expense of them did not exceed $300), and he was to finish the buildings under the directions of Coe.

Under these contracts the buildings were commenced, and during their progress—under the superintendence of Coe—they were materially altered from the contract or specifications, and although there never was anything said about extra work, or whether the alterations caused any additional expense in their making, the work was proceeded with by Naylor, until Coe had paid out on account of it, in cash, more than the whole contract price. At this time, which was about the 1st of September, 1857 (and during the first week of that month), the parties had a conversation, wherein Naylor stated that, if Coe would pay $22,500, it should be in full of all demands for the building and extra work. By the receipt which Naylor gave about this time, it appears that there had been paid him by Coe, prior to August 17, 1857, $19,500, in full settlement for building the store in question, as per contract; and from Naylor's testimony, there is no doubt that he was paid, in all, $23,642, before he abandoned the building, which was about the 15th of September, 1857, when it was in an unfinished state; and after which the defendant Coe expended about $2,000 in its completion. Subsequent to this abandonment, and after Naylor had been paid not only the contract price agreed on, but also, and in addition, a greater sum than he had agreed to accept in full satisfaction of the contract price and for all extra work performed by him, the plaintiff filed notice of the lien which he now seeks to enforce against the defendant Coe, as owner of the building, for the value of certain materials furnished and used in its construction.

I do not understand how such a claim can be maintained. We have repeatedly held, and such no doubt is the true interpretation of the mechanics' lien law, that in order to sustain the lien it must be made to appear affirmatively that at the time of filing the notice there was actually due or owing from the owner to the contractor, upon the original contract, a greater sum than the

amount for which the lien is claimed. *Doughty* v. *Devlin*, 1 E. D. Smith, 625; *Cronk* v. *Whittaker*, id. 647. And if it appears that the contractor is not entitled to recover upon his contract, by reason of his having abandoned the work before its completion, or that the work has not been performed in accordance with the contract made with the owner; or if it appears that the owner has paid or settled with the contractor before the notice of lien is filed, the lien creditor cannot maintain his action. *Allen* v. *Carman*, 1 E. D. Smith, 692; *Cunningham* v. *Jones*, 3 id. 650.

In other words, the lien creditor, by filing his notice of lien, succeeds only to the rights and claims which at the time is possessed by the original contractor, and to no other or greater; consequently, unless a state of facts is shown which, in a proper action, would entitle the original contractor to recover from the owner, the lien creditor cannot recover. *Cunningham* v. *Jones*, *supra*. It is probable, however, that if the owner and contractor should collude together, and agree upon a settlement in respect to the contract price, or the extra work connected with the contract, for the purpose of depriving parties, who may have contributed their labor or materials to the erection of the building, of the lien which the statute intends to secure to them, the court would be disposed to disregard any settlement which appeared to have been made for such a purpose; and in determining as to the intent of the parties, evidence showing that the value of the extra work performed was grossly disproportionate to the amount allowed for it on the settlement, might not only raise the presumption that the settlement was fraudulent in respect to lien creditors, but would, unexplained, afford strong ground for declaring it to be so in fact. *Lynch* v. *Cashman*, 3 E. D. Smith, 660; *Quimby* v. *Sloan*, 2 id. 594.

As to the settlement, in this case, having been made as shown by the receipt, there can be no doubt. It stands in no way contradicted. But whether the conversation referred to actually took place, is not so certain, as Naylor positively denies it. However, the weight of the evidence is, in my opinion, so clearly against him on this point, that it may be assumed, in the absence

of any finding, by the judge who tried the cause, to the contrary, as a fact proven in the case.   This being so, it seems to me clear that Naylor had no claim against Coe for the erection of the building at the time the plaintiff filed his notice of lien, on September 24, 1857, nor was any money then due him on the contract.

If it be said that the amount allowed for the extra work was disproportionate to its value, where, I ask, is the evidence upon this point ?   I am aware that the witnesses Griffith and Frye testify to the value of the carpenters' and masons' work in the building being $29,529, but they do not state what part of this value is made up of extra work not contained in or called for by the contract, or what has been added to the value by Coe since Naylor abandoned the work.   And even if it were conceded that there had been no such conversation and settlement as alleged, in respect to the extra work, there is no evidence which would justify us in presuming that there is anything owing by Coe to Naylor on account of it; and this being so, I am of opinion that the plaintiff has failed to establish any indebtedness from Coe to Naylor at the time of filing the notice of lien.

But, to go further, I think the evidence establishes, beyond a question, that Naylor abandoned the building and his contract before it was completed ; and it cannot be denied that his right to compensation for the extra work is to be determined, in some degree, by the contract to which it was an addition.   By that contract he was entitled to no compensation until the work specified in it was entirely performed, and there being no proof that the defendant Coe agreed to accept the building in the unfinished state in which Naylor left it, or that he waived further performance by Naylor of his contract, it is quite clear that Naylor could maintain no action upon the contract, and as the plaintiff, as lien creditor, succeeds only to the rights of the original contractor, it follows that he cannot.   *White* v. *Hewett*, 1 E. D. Smith, 395 ; *Neville* v. *Frost*, 2 id. 62 ; *Cunningham* v. *Jones*, *supra; Pullman* v. *Corning*, 5 Selden, 93.

Judgment affirmed.