# Law and Equity

IN THE

# SUPREME COURT

OF THE

# STATE OF NEW YORK.

## Van Buskirk & Conkey vs. Stow.

By a written agreement made between the parties, on the 1st day of August, 1859, the defendant agreed to fit up and alter a certain building, for the purpose of being occupied by the plaintiffs as a malt-house, which fitting up and alterations were to be completed within sixty days, at an expense of $2250, and the plaintiffs agreed to take a lease of said building for five years, at an annual rent of $600, and they were to take charge of and superintend the alterations. In an action to recover damages for the defendant's failure to complete the alterations within the time specified in the agreement, it appeared that extra work was ordered by the plaintiffs to be done, over and above that called for by the original plan and specifications; that they requested the defendant to put in some trimmers in one story of the building, for the purpose of strengthening the same, not called for by the original contract; and that the work required by the original plan and specifications would probably have been done in time but for the extra work; *Held* that the time must be considered as having been extended by the parties, to enable the alterations agreed on to be completed.

*Held, also,* that the time for the performance of the work having been thus extended, virtually for the benefit of the plaintiffs, and at their request, and they having subsequently taken a lease from the defendant of the up-

per loft of the building, which was not included in the original contract, the plaintiffs thereby *waived* their claim for damages for the non-performance of the contract within the time specified.

*Held, further,* that the parties had a perfect right thus to alter, or to waive, any of the terms of the original agreement; or to extend the time of its performance.

And that although a waiver was not distinctly set up in the answer, yet as the facts were all before the referee, and within the issue, the referee was authorized to decide that question. If necessary, the pleadings might have been made to conform to the facts proved.

APPEAL by the plaintiffs from a judgment entered upon the report of a referee. The action was brought upon the following agreement between the parties :

"This agreement, made the first day of August, 1859, by and between Frederick A. Stow, of the city of Troy, of the first part, and Charles F. Conkey and John M. Van Buskirk, of the village of Lansingburgh (to compose the firm of John M. Van Buskirk & Co.) of the second part, witnesseth, that the said party of the first part does hereby agree to fit up and alter the building known as the India Rubber Factory, situated in the ninth ward of the city of Troy, for the purpose of being occupied as a malt-house by the parties of the second part, the same to be done according to plans and specifications furnished for the same by M. A. Upham, at an expense of twenty-two hundred and fifty dollars, and also to paint the roof of said building; all of which said fitting up and alterations are to be done and completed within sixty days from the date hereof.

And the said parties of the second part hereby covenant and agree to and with the said party of the first part, that as soon as the above repairs and alterations, according to the above mentioned plan and specifications, shall have been completed at the expense aforesaid, to take and receive from the said party of the first part and to execute to him a lease for five years from the date thereof of the above mentioned premises, the said party of the first part reserving the entire upper story thereof, with the privilege and use in common of

the stairs at the north end of the building; the lease to bear date the 1st day of October next, at an annual rent of six hundred dollars, to be paid in equal quarterly payments; and it is mutually agreed that the lease of said premises, to be executed by the said parties of the second part, is also to be executed by Morris Van Buskirk, of Lansingburgh, or some other person acceptable to the party of the first part, as surety for the performance of the agreement in said lease, and for the payment of the rent.

The parties of the second part are to take the charge of the alteration of the premises, as per plan and specifications of said Upham; the money to be disbursed by the party of the first part. And the said parties of the second part do hereby, for value received, guarantee the performance of the contract by Upham & Ayers, to alter and repair the said premises for the said party of the first part. And the said parties of the second part also covenant and agree with the said party of the first part, for value received, to protect and save harmless the said party of the first part from all liens upon the said premises for altering and repairing the same, upon the part and in behalf of Upham & Ayres, or parties working under or for them — the said party of the first part having paid the said Upham & Ayres for such alterations and repairs as the same have become payable by their contract for doing the same."

The plaintiffs alleged in their complaint that they had in all things fully performed and carried out the covenants and conditions contained in said agreement on their part to be performed and carried out, but that the defendant wholly failed and neglected to perform and carry out the covenants and conditions contained in said agreement on his part to be performed and carried out; that said defendant, in compliance with said agreement, commenced said repairs and alterations, but failed and neglected to complete and finish them according to said plans and specifications, within the time agreed upon in and by said agreement, and wholly failed and

neglected to complete said repairs and alterations until long after the said time had expired, to the great damage of the plaintiffs; that the plaintiffs, in consequence of the failure and neglect of the defendant to complete and finish said repairs as he had agreed, could not and did not obtain possession of said premises until long after the time agreed upon had expired, to the great damage and loss of said plaintiffs, &c.; and that the plaintiffs entered into possession of said premises as soon as they were able to obtain possession, for the purpose of carrying on their business of malting, but that in consequence of the defendant's failure the plaintiffs were greatly hindered and delayed in the prosecution of their said business, to their great damage and loss. Demand of judgment for $1000. The answer was a general denial of the allegations of the complaint. The referee found the following facts: 1st. The execution of the agreement by the parties. 2d. That the performance of the agreement was soon after entered upon, the defendant making contracts for the performance of the work required by the plan and specifications, and the contractors soon after commencing the work, which was done under the superintendence of the plaintiff Conkey. 3d. That the plaintiffs found that extra work was required, over and above that called for by the plan and specifications, &c.; that they directed the performance of some of such extra work by the contractors employed to do the work required by said original agreement. 4th. That the building was not in condition to be occupied for malting purposes until about the 24th of November, 1859. 5th. That a short time before the 19th day of September, 1859, the plaintiffs requested the defendant to put in some trimmers in one story of the building, for the purpose of strengthening the same, not called for by the original contract, and that the defendant on the 19th day of September, 1859, by written contract, employed Upham & Ayres, who were the contractors employed to do the carpenter's work provided for by

the original contract and plan and specifications, to do this work, with the knowledge and assent of the plaintiffs. That one cause of the delay in completing the building and making it suitable for malting purposes was this contract for the trimmers, and some difficulty in procuring timber for the same, and the performance of other extra work by Upham & Ayres. 6th. That the work required by the original plan and specifications was not fully performed within the time required by said original contract, but that the same would in all probability have been performed in time but for the arrangements for such extra work made with Upham & Ayres. 7th. That on or about the 27th day of October, 1859, the plaintiffs, or one of them, stated that they would not take the building unless they could have the upper loft which was reserved in the original contract, and that thereupon the defendant, through fear that the plaintiffs would not take the building, consented to let them have the upper loft, provided they would properly brace the same so as to support grain, and that the plaintiffs have since occupied said upper loft. 8th. That the plaintiffs, before executing the lease called for by the agreement of August 1st, 1859, notified the defendant that they would not waive their claim for damages for his failure to complete the building according to contract by executing the lease. And the referee found as conclusions of law from the foregoing facts: 1st. That the performance of such extra work at the request of the plaintiffs operated to extend the time of performance of the original contract of August 1st, 1859, and with the subsequent lease by the defendant to the plaintiffs of the upper loft of the building was a waiver of any claim for damages for the non-performance of the same in time. 2d. That the plaintiffs were not entitled to recover any thing of the defendant in this action, but that the defendant was entitled to judgment against the plaintiffs for his costs and disbursements therein.

*N. Davenport,* for the appellants and plaintiffs.

*James Freiot,* for the respondent and defendant.

MILLER, J.  It is conceded that the defendant failed to perform the agreement first entered into between him and the plaintiffs within the time therein named and required, and the case presents the simple question whether any sufficient excuse is offered, to exonerate him from liability for its non-performance.

It is contended by the plaintiffs' counsel that the time for the fulfillment of the agreement was not extended, nor its performance within that time in any manner waived by the plaintiffs.

I think that it is established by the evidence that the original contract was essentially changed by the acts of the parties, and that much of the work was done under other and different arrangements entered into after the work was commenced.

1. The plaintiffs, under whose direction the work was actually done, soon after it had been begun, found that extra work would be required, and directed its performance.  It was done accordingly, by the contractors employed to do the work by the original agreement.

2. About the middle of September, 1859, the plaintiffs requested the defendant to put trimmers under the building so as to strengthen the floors, and immediately afterwards the defendant entered into a new contract with the contractors of the original job to do this work.

It is said that the defendant, by his contract with the plaintiffs, was bound to put in the trimmers.  The contract provided that the defendant was to fit up and alter the building for the purpose of being occupied as a malt-house, according to the plans and specifications furnished by the contractors.  By the specifications there were to be posts in the cellar and in the principal story, and also what were needed

Van Buskirk v. Stow.

in the other stories.  It was conceded by the parties to the
contract that trimmers were not included in the specifications,
which concession appears to have been assented to by the
plaintiffs.  They were certainly not named specifically, and
all the parties having acted upon the assumption that they
were not provided for, including the plaintiffs, (who were
guarantors for the contractors,) it is fairly to be inferred that
they were not technically embraced in the agreement.  I in-
cline to think that the plaintiffs were bound by this assump-
tion.  Even if the general provisions in the specifications and
the covenant in the lease to make all repairs covered the
trimmers, as is claimed, yet as the plaintiffs assented to a
different construction, which may have induced the action
of the defendant, it does not lie with them now to insist up-
on another rule.  It should be observed that the referee found
as causes of the delay in completing the building and in
making it suitable for the purposes designed, the contract for
the trimmers, some difficulty in procuring timber, and the
performance of other extra work by the contractors.  I
think his finding is sustained by the evidence.  There is cer-
tainly no such preponderance of testimony against it as would
authorize an interference on that account.

3. It also appears that in the latter part of the month of
October the defendant seeing grain taken in the upper story
of the building which was reserved under the original con-
tract, forbade the plaintiffs putting any more grain there.
The plaintiffs told the defendant that they would not take
the building unless they could have the upper loft, and the
defendant for fear they would not take it, entered into a
new arrangement with them, by which they were to have it,
provided they would brace it up properly.  This arrange-
ment was carried out and embraced in the lease subsequently
executed, thereby making another important and material
change in the original contract.

It will be seen that there were several variations from the

first contract, which to a considerable extent changed its character.

It being established that the first contract was changed in many respects so as to require a longer period of time for its performance, and the evidence showing, as the referee has found, that the work required by the original plan and specifications would probably have been performed in time but for the extra work; it must be considered, I think, that the time was extended to complete the alterations agreed upon.

I am also of the opinion that the time for the performance of the work having been thus extended, virtually for the benefit of the plaintiffs, and at their request, and they having taken, subsequently, a lease from the defendant of the upper loft, which was not included in the original contract, the plaintiffs thereby waived their claim for damages for the non-performance of the contract within the time provided for.

The parties have a perfect right thus to alter, or to waive any terms of the original agreement. They have also a right to extend the time of its performance. (*Clark* v. *Dales,* 20 *Barb.* 64, *and authorities there cited.*)

Various objections are made to the position that there was a waiver; some of which it would be well briefly to notice.

1st. It is urged that the execution of the lease did not operate as a waiver, the covenant to repair and the covenant to take the lease being each independent of the other.

Admitting that it did not of itself work a waiver yet in connection with the extension of the time of payment it did have that effect. The lease embraced more than was included in the original contract. It substituted a new arrangement in the place of the old one. It was a surrender of the old agreement for another and a new one, and the plaintiffs having assented to it cannot now claim the benefit of the one thus given up. They are estopped by their own act from claiming under the first contract. They took a position with full knowledge of all the facts, and must be regarded as accepting the new contract with the original time

Van Buskirk v. Stow.

fixed extended. Nor is there any force in the point that the covenants are independent.

2. It is said that no issue of waiver was raised by the pleadings in the case, and no such claim made upon the trial, and hence the referee's conclusion that the plaintiffs had waived all claim for damages was erroneous. Although not distinctly set up in the answer, the facts were all before the referee, and I think within the issue. The evidence on the subject bore directly upon the question of performance, and even if the pleadings did not embrace this precise defense, yet as the testimony was in the case, the referee was authorized to decide the question of waiver. If need be, the pleadings might have been made to conform to the facts proved.

3. It is further objected that it was not understood or intended by either of the parties, at the time the agreement was made in relation to the upper story of the building, that such agreement was to be a waiver or settlement of the plaintiffs' claim for damages. The declarations of the parties are referred to for the purpose of sustaining this view of the subject. It is true that the plaintiffs informed the defendant that they would not waive their claim for damages. If they had already done so by extending the time for the performance of the contract, a mere declaration of that kind would not affect the question of waiver. Nor would it be affected by any understanding, in contravention of the legal effect of the written lease and the inference to be drawn from the fact of its being executed. I do not therefore consider that it can be claimed, fairly, that the understanding or intention of the parties was different from what may be legitimately inferred from the written instrument and the circumstances surrounding the case.

After a careful examination of the questions raised by the plaintiffs' counsel I see no error in the decree of the referee, and am of the opinion that a new trial should be denied, and the judgment entered upon his report should be affirmed with costs.

GOULD, J.   There is evidence to support the finding, by the referee, that the delay in completing the work was, at least in part, occasioned by the *extra* work which the plaintiffs called for, and in part paid for, and by the *new* work, under the second agreement to put in "trimmers." This being so, the plaintiffs could not insist on *time* as absolutely essential to the contract; and there is, by the evidence, no criterion furnished for telling how much of the delay (and consequent damage) was thus caused by the plaintiffs, or for how much the defendant was responsible.   In the absence of any such criterion, there was *no rule of damages* to be drawn from the evidence, and the plaintiffs were rightly nonsuited.

PECKHAM, J. concurred.

Judgment affirmed.

[ALBANY GENERAL TERM, March 2, 1863.   *Gould, Peckham* and *Miller,* Justices.]