JOSEPH H. SHUTE *and another v.* JOHN C. HAMILTON.

Where in a stipulation for the forfeiture of a stated sum, upon the failure of per-
formance of a covenant, the intention of the parties to fix the amount of damages,
which otherwise would be conjectural and uncertain, is plainly expressed, and
the forfeiture is to be applied only in the event of the breach of a single cove-
nant, it is not a penalty but liquidated damages.

The plaintiff executed a contract with the defendant, by which he agreed to erect
a building upon the ruins of an old structure ; and stipulated that, should he
fail to complete the building within the time specified in the contract, " fifty
dollars for each and every day that he shall be in default is mutually fixed and
determined as the liquidated damages of the owner (defendant) by reason there-
of." The day after the execution of the contract, the plaintiff further agreed
with the owner to remove the debris of the old building preparatory to the erec-
tion of the new building: *Held*, in an action by the contractor to recover the
contract price and for the extra work—

1. That the doing of the preparatory work of clearing away the debris of the old
building was necessarily contemplated by the parties when the contract was
made, and that the plaintiffs' subsequent agreement to do such preparatory work
did not modify the contract, or enlarge the time within which, by the terms of
the contract, the new building was to be completed.

2. That the " fifty dollars for each and every day " of delay stipulated to be paid
by the contractor, are liquidated damages and not a penalty, which the owner
might set up by way of counterclaim.

3. That payments by the owner on account of the work done, made after the plain-
tiffs' failure to complete the building within the stipulated time, did not consti-
tute a waiver of the condition in the contract as to the time of completion, or of
the owner's claim for damages under it.

After a breach of the condition of a contract, a claim for damages for the breach
will not, as a general rule, be deemed to be waived except by a new agree-
ment.

In determining whether a penalty or liquidated damages is meant in a contract,
the actual intention of the parties, in view of the whole subject-matter, is looked
to, and if this is doubtful upon the face of the instrument, the instrument may
be aided and the real intention ascertained by proof of extrinsic facts.

The admission of evidence to show that the actual damages sustained by the party
were greater than the sum fixed in the contract as liquidated damages: *Held*,
not a material error, as the amount recoverable could not, and did not, exceed
the amount of damages as fixed and liquidated by the contract.

Shute v. Hamilton.

The contract provided that the plaintiffs were not to excuse their delay on account of any neglect of other contractors, unless written notice of such neglect was given to the defendant, and no such notice had been given: *Held,* that the referee was not in error in refusing to find that the plaintiffs had been delayed six weeks by the delay in the work of other contractors.

By the terms of the contract the plaintiffs were to furnish proper materials, but they might use such of the materials of the old structure as were good enough, and the plaintiffs did use many of the old brick: *Held,* that they could not recover for extra work in cleaning such old brick.

In an action upon contract for work done, the only counter-claim by the defendant being a liquidated amount by way of damages for failure to complete the work by the stipulated time, the referee found that part of the work was "badly done," and allowed the defendant $1,391 for it: *Held;* that the finding could not be sustained by way either of counter-claim or recoupment, there being no claim for damages on that account set up in the answer.

APPEAL by the plaintiffs from a judgment entered upon the report of a referee.

The action was brought by the plaintiffs to recover for work done and materials furnished at the defendant's request, in erecting a building on the corner of Broadway and Barclay street, New York.

The complaint alleged: (1.) That the plaintiffs entered into a contract with the defendant, and agreed to do all the mason-work on the building for $41,300; that they did the work, &c., and $300 of said contract price still remained due and unpaid. (2.) That they did extra work, at the defendant's request, upon the building, worth $2,455.43. (3.) That they performed other work, worth $2,315.12, in taking down the walls and excavating the ruins of the old building. (4.) That they did further extra work, worth $25.75.

The answer denied that the plaintiffs had complied with the covenants and conditions of their contract, and alleged that the extra work performed by the plaintiffs was not worth more than $3,157.86; and further alleged that, by the terms of the contract, the plaintiffs were to erect the building, and complete their work by November 1, 1866, and that in default thereof they were to pay to the defendant $50 for each day they should be in default, as the fixed, settled and liquidated damages for such non-fulfillment; that the building was not completed until Feb-

ruary 1, 1867, and that by reason of the failure of the plaintiffs, $50 for each day from November 1, 1866, to February 1, 1867, or $4,600 in the aggregate, became due to the defendant; that by reason of the failure of the plaintiffs to complete the building, the defendant lost the use thereof, and sustained damages to the amount of $4,600, which sum the defendant claimed to deduct from any demand of the plaintiffs, and demanded judgment for $417.02. Issue was joined by the service of the plaintiffs' reply denying the allegations in the defendant's answer, and the cause was referred to William Mitchell, Esq., as sole referee.

The referee reported in favor of the defendant. The plaintiffs appealed to the general term.

*George W. Carpenter* and *S. P. Nash*, for appellants.

*I. M. Robertson*, for respondent.

By the Court.*—Daly, Chief Justice.—As the contract was originally drawn, the plaintiffs were to take down the old walls to the foundation, remove all the rubbish, and do all the excavating necessary to the laying of the foundation for the new structure. By an addenda, however, to the instrument before it was executed, it was declared that this was not to be included in the contract. A person named Richardson was employed by the defendant to do it; but the day after the signing of the contract the plaintiffs agreed with the defendant to do it, and Richardson was dismissed.

The referee has found, as a conclusion of law, that the doing of this preparatory work was necessarily contemplated by both parties when the plaintiffs stipulated to erect and finish the new structure by the 1st of November, 1866, or pay to the defendant, as liquidated damages, fifty dollars per day for every day's delay thereafter, and the finding of the referee in this respect was clearly correct.

When the plaintiffs contracted to erect and finish the new

* Present—Daly, Ch. J., Loew, and Robinson, JJ.

building by the time agreed upon, they necessarily knew that this preparatory work would have to be done before they could begin theirs, and it is therefore to be assumed that they made allowance for the time it would take to pull down the old walls, remove the *debris*, and make the excavations, when they fixed upon the 1st of November, 1866, as the period within which they stipulated to erect and complete the new building.

They had a right to assume that the defendant would have this work done as soon thereafter as it could be done in the ordinary course, and after they agreed to do it themselves, their position in respect to the time for the commencement and completion of the new structure, was in no respect changed for the worse. This work had to be done by some one before they could commence their labors, and, whether it was done by them or by others, it had no bearing upon the time within which they agreed that they would erect and complete the new building. They had provided in their contract against any delay in the performance of this work by a provision that they should be entitled to excuse and justify any default on their part on account of any omission or neglect of other contractors, by giving written notice of it to the defendant or to the architect; a provision which became inapplicable in respect to this particular work, when they undertook to do it, as they owed it alike to themselves and to the defendant, in the faithful fulfillment of their contract, to execute it with all reasonable dispatch.

The plaintiffs commenced clearing out the ruins on the 28th of May, 1866, and they were engaged in this work until the 28th of June, following. If the time which then remained for the erection and completion of the new building was too limited, the plaintiffs are alone answerable for it. The defendant certainly is not. If too much time was occupied in taking down the old walls, removing the ruins, and making the excavations, it must have arisen from the plaintiffs' inability or delay in doing it, or, if that time was no more than was necessary, then it was incumbent upon the plaintiffs, when they undertook to do this, to have the period extended for the completion of the new building. No material delay was occasioned by the change, for they made the agreement to do this preparatory work the

very day after they signed the contract for the erection of the new building. Where the performance of a contract within the time stipulated for, becomes impossible by reason of some act of the other party, the party contracting with him is excused. (*Russell* v. *Da Bandeira*, 13 Com. B. N. S. 204; Comyn's Digest, Condition L. 6.)

Thus, where one who contracts to have work done for him, omits to do something on his part, which is essential before the work can be begun or carried on and by which the other party is delayed (*Holme* v. *Guppy*, 3 Mees. & Welsb. 386 ; *Allamon* v. *The Mayor, &c. of Albany*, 43 Barb. 33) ; or where an agreement is afterwards made for extra work, or for a change in the plan, which produces delay (*Van Buskirk* v. *Stow*, 42 Barb. 9 ; *Russell* v. *Da Bandeira*, 13 Com. B. N. S. 148); or where the one for whom the work is to be done is prevented from doing what was essential on his part through the happening of a casualty (*Niblo* v. *Binsse*, 1 Keyes, 476), the strict condition in respect to time is waved, and the party who is to do the work is allowed a reasonable time thereafter within which to complete it (*Green* v. *Haines*, 1 Hilt. 254 ; *Meehan* v. *Williams*, 2 Daly, 367).

Nothing of this kind existed in this case, for if the plaintiffs were prevented from putting up the new structure within the time agreed upon, in consequence of the length of time occupied in clearing away the ruins of the old one, it was not through any act of the defendant but through a cause for which the plaintiffs are answerable, or against which they should have provided.

The stipulation for the payment by the defendant of $50 a day for every day's delay after the 1st of November, 1866, was not a penalty, but damages liquidated and agreed upon between the parties.

The language of the stipulation is: " Should the contractor fail to complete the work by the time specified the sum of fifty dollars for each and every day the said contractor shall be in default is hereby *mutually fixed and determined as the liquidated damages of the owner by reason thereof*."

In the first place, the intention of the parties to liquidate and fix the amount of the damages in the event of the plaintiffs'

failure to complete the building by the specified time, is here plainly expressed.

In the next place, it is applied only in the event of the breach of a single covenant, and lastly the damages, from their very nature, were conjectural and uncertain, all of which show incontrovertibly that this is not a penalty, but an agreement to fix beforehand, by this provision, the actual amount of the damages in the event of a breach (*Mundy* v. *Culver*, 18 Barb. 336; *Cotheal* v. *Talmadge*, 1 E. D. Smith, 573; *Id.* 9 N. Y. 551; *Dakin* v. *Williams*, 11 Wend. 67; *Bagley* v. *Peddie*, 16 N. Y. 469; *Lampman* v. *Cochran*, *Id.* 275; *Hosmer* v. *Fine*, 19 Barb. 106; *Jackson* v. *Baker*, 2 Edw. Ch. 471; *Beale* v. *Hays*, 5 Sandf. 640; *Academy of Music* v. *Hackett*, 2 Hilt. 217; *Crisdel* v. *Bolton*, 3 Car. & P. 240).

The building was not completed until the 1st of February, 1867, or two months after the time agreed upon; but the referee, upon the assumption that some delay before the 1st of February might be excusable in the plaintiffs, allowed the $50 only up to the 15th of January, charging the plaintiffs with two months and a half for delay, or $3,750. This he might properly do, as the parties had arranged between themselves what should be the damage per day, and if the referee was of opinion, upon the facts, that two weeks of the delay had been occasioned by the defendant, he could disallow the $50 a day for that period of time.

It appears by the testimony that from ten to fourteen days was necessarily lost before the lathing was begun. It is assumed by the plaintiffs' counsel that this was a delay which was occasioned by the defendant, or by the other contractors, and for which the referee made an allowance to the plaintiffs of two weeks, by limiting the defendant's recovery of $50 a day damages to the 15th of January, the building having been finished on the 1st February. But it does not appear by the referee's report or findings that it was for this that he allowed the two weeks, nor does it appear from the defendant's testimony that the loss of from ten to fourteen days was occasioned either by himself or by his employees.

On the contrary, if any inference is to be drawn from the

defendant's testimony, it is, that he meant to say that the plaintiffs might have gone on with the lathing and plastering, although the carrying up of the brick work was delayed by the cornice, and that, in consequence of their neglect to do so, from ten to fifteen days was lost; for he distinctly states that the delay in putting on the cornice did not delay the completion of the building.

The referee evidently so understood the defendant's testimony, as he has found that the delay in the putting up of the cornice did not prevent the plaintiffs from plastering in other parts of the building, or keeping their men fully occupied.

The referee has found that after the making of the contract and after the plaintiffs had progressed with their work, the defendant had alterations and changes made in different parts of the building, and caused a large amount of extra work to be done, as well by the plaintiffs as by the carpenters and other mechanics, amounting to several thousand dollars; but the referee refused to find that this extra work caused any delay in the completion of the building by the 1st of November, 1866, to which the plaintiffs excepted.

The only items to which the plaintiffs have called our attention under this exception, are as follows:

1. That the defendant on the 20th of October, 1866, made a contract for heating the premises by steam, and another contract, for the same purpose, on the 20th of December, 1866. This required plastering around the tops of each box enclosing the pipes, the boxes being put up outside of the plastering; but there is nothing in the evidence to show that this produced any material delay.

2. That the defendant gave an order on the 29th of October, 1866, to defer setting up a partition on the third story. This was but a day before the expiration of the time within which the plaintiffs were to complete the building. The order was countermanded within a few days, and the defendant testified that there was not the delay of a minute in consequence of the giving of this order, and stated the reason why.

3. That a change was made in the depth of and in the arrangement of the cellar below the railroad office.

The testimony, however, does not show precisely when which change was made. In the account there is a charge for cutting out small areas and grading cellars, embracing nine and a quarter days' work, between the dates of the 15th and 29th October, 1866, whilst the defendant testifies that this change was made in November, or in the early part of December, and if he is correct, it was after the time fixed for the completion of the building, and, consequently, could have nothing to do with preventing the completion of it on or before that time, and if it occurred before, the delay must have been slight, as it involved nothing more than the additional lathing and plastering of the sides.

The evidence shows that no delay was caused by any changes made by the defendant before the 1st of November, unless it might have been by this cause, and by the making of coal slides and light holes, which the referee finds to have been extra work, and for which he allowed $191.68.

It does not appear exactly either when this was done.

In the account furnished to the defendant, it is charged for as days' work, from the 5th to the 19th of November, 1866, embracing nine days and a quarter; but the plaintiff's foreman, Dorie, says, that he put some of the masons to build a coal slide, and the laborers to excavating the cellar a foot deeper, by the defendant's directions, during the time of the delay in putting up the cornice, and that he left the premises on the 1st of November, and that the cornice was not then completed; from which it may be inferred that the excavation of the cellar and the making of the coal slides and light holes were begun before the 1st of November, and that is all; so that it is impossible to say exactly, when this work occurred, and what delay it caused, or if it caused any.

The referee has found in general terms, that none of the delay was caused by the defendant; that it took the plaintiffs two months more to finish the building than the time stipulated for; that it was not completed until the 1st of February, 1867, some of it not until March 1st, 1867, and some of it was not done pursuant to the contract, or as he expresses it, " badly done," and for which he allowed the defendant $1,391.

But, as he says, supposing some of the delay before February might be excusable in the plaintiffs, he charges the $50 a day damages only from the 1st of November, 1866, to the 15th of January, 1867. This is somewhat loose and indefinite, and the reason given for it is, that there was considerable extra work, and that the extra work may have led the plaintiffs to employ men on it, when otherwise they would have been employed on the contract work.

He specifically refused to find, as requested, that the plaintiffs were delayed six weeks by delay in the work of other mechanics or workmen employed by the defendant, in which, I think, he was right; though it is not material, whether he was or not, as the stipulation in the contract was, that the plaintiffs were not to excuse or justify their default, on account of any neglect or omission of other contractors or mechanics, unless they gave written notice of such neglect or omission to the defendant or to the architect, and there is no pretence that they did so.

The referee's findings upon these points appear to be fully sustained by the evidence. Very little delay, if any, was caused by the act of the defendant prior to the 1st of November, 1866. It arose from the length of time consumed in taking down the old walls and removing the ruins, delay on the part of those acting under the plaintiffs, or the omission on their part to forward the work with the efficiency and method which was necessary, under the stringent stipulation they had entered into.

It is insisted, that the defendant waived the condition in respect to time, by making payments as the work progressed, after the 1st of November.

By the contract certain payments were to be made at certain stages in the progress of the work, and the defendant continued to make these payments from the 1st of November to the 12th of January, as he had done before, leaving only to be paid on the last payment $300.

The referee has found, that by these payments the defendant merely treated the contract as still in force, and that they constituted no waiver of the defendant's claim for damages, by

reason of the delay. The finding was correct. The acts here relied upon as amounting to a waiver took place after the plaintiff's failure to complete the building within the stipulated time, and in respect to the waiver of such a condition or of all claim for damages under it, there is a very material distinction between a party's acts before and after the breach of a condition; for after a breach, as a general rule, there is no waiver of the claim for damages, unless by the making of a new agreement. (*Barber* v. *Rose*, 5 Hill, 76; *Delacroix* v. *Buckley*, 13 Wend, 75; *Lattimore* v. *Harsen*, 14 Johns. 330; *Hasbrouck* v. *Tappen*, 15 *id.* 200; *Little* v. *Holland*, 3 Term. Rep. 590.)

In the first case above cited, *Barber* v. *Rose*, the defendant, after the failure to complete the work by the stipulated time, told the plaintiff to go on and finish it, and that he, the defendant, would help him to do so, on being allowed a compensation, and under which arrangement the work was finished.

The court below regarding this, as in effect, an agreement to extend the time, would not allow the defendant to show the loss he had sustained by the delay in recoupment of damages, and for this reason the judgment was reversed, the court above holding that the waiver of the time, after the breach, was no waiver of the defendant's claim for damages, as it would have been, if the contract had been modified before the time had arrived; and in *Hasbrouck* v. *Tappen*, *supra*, the plaintiffs, after breach, declared that the time was immaterial, and that he would take no advantage, if the defendant performed his contract, on account of his not doing it on the precise day agreed upon, and the court held that, even if this amounted to an agreement to extend the time, it was no waiver of the plaintiffs' right to the damages liquidated and fixed by the written agreement.

There was no provision in the contract that the defendant should or might withold the amount of the damages from any outstanding payment. It was his interest, notwithstanding the breach, to have the building completed, and by making the payments thereafter, at the appointed period, as the building progressed, he waived nothing. He had the right to treat the

condition in respect to time as a distinct covenant, for the breach of which he had his remedy by action, and he could accordingly set it up as he did, by way of counterclaim in the action brought by the plaintiffs for the residue of the contract price and the extra work. (*Smith* v. *Brady*, 17 N. Y. 173; *Smith* v. *Coe*, 2 Hilt. 365; *Dibblee* v. *Corbett*, 9 Abb. Pr. 200.)

The admission of evidence of the amount of the rent obtained for the building yearly, constitutes no ground for setting aside the report. It could not and did not affect the amount which the defendant was entitled to and recovered, for the failure to complete the building by the stipulated time, as that amount was liquidated and fixed by the previous agreement of the parties. The only effect of it was to show that the actual loss, which the defendant sustained by the delay, was very much greater than the measure of damages agreed upon, which might have been material, if it were doubtful from the language of the contract, whether the sum specified, $50 per day, was simply a penalty, or a liquidation and settlement before hand of the amount of the damages in the event of a breach; for in determining whether a penalty or liquidated damages is meant, it is the actual intention of the parties, in view of the whole subject matter, which is chiefly looked to, and if this is doubtful, or uncertain, upon the face of the instrument, the instrument may be aided, and the real intention ascertained by the proof of extrinsic facts. (*Colwell* v. *Lawrence*, 38 N. Y. Rep. 78, 74; *Smith* v. *Bell*, 6 Peters, 75; Sedgwick on Damages, 399, 421, 2d ed.; Greenleaf on Evidence, § 286.) But in this case it was unnecessary, as the contract shows what the intention of the parties was, and the introduction of the evidence could therefore be productive of no injury to the plaintiffs.

By the contract the plaintiffs were to furnish good, proper, and sufficient materials for the mason work, and by the specification it was provided, that such of the old materials as were good, fitting, and in accordance with those called for in the specification, might be used in the construction of the new edifice. This did not make it obligatory upon the plaintiffs to use the old brick.

They were at liberty to do so or not, as they thought proper.

The provision was one entirely for their benefit, if they thought fit to avail themselves of it, which, it appears, they did, and then charged the defendant $380 as extra work for the cleaning of the brick, that they might be enabled to use them in the new building. With this the defendant had nothing to do. It was immaterial to him, whether they cleaned and used 190,000 of the old brick, or that quantity of new brick. He had nothing to do with furnishing the materials, and if the proper materials were put in the building, it was of no consequence to him, whether the plaintiffs procured them by cleaning up the old, or by purchasing new brick. "The excavation and cleaning out the ruins, and taking down the old walls" was what the defendant reserved to himself, when the contract was signed.

It does not appear that any part of this consisted in cleaning up the old brick so as to convert it into materials which the plaintiffs might use in their performance of their contract. The referee has found that when the contract was signed, Richardson was engaged in the defendant's employ, in taking down the bricks and piling them, and, he adds, probably cleaning them. But the latter fact does not appear by the evidence, nor anything from which it can be inferred that there was any understanding, express or implied, that the defendant was, at his expense, to clean up the old brick that the plaintiffs might use it in the building. If this had been the understanding, or if it could be inferred from the contract, that the defendant charged himself with the obligation of doing this, then the referee was wrong in deducting this item $380 from $4,594, the amount charged by the plaintiffs for taking down the old walls, removing the ruins, and making the necessary excavations preparatory to beginning the new structure; for there is no doubt that, in their subsequent contract, they undertook to do exactly what the defendant, by the written contract, reserved to himself, or Richardson was employed to do. But taking the contract and the whole of the testimony together, I think the referee was right in disallowing this item. A mason builder of twenty-five years' standing was asked, under the plaintiffs'

exception, respecting the custom in the use of the old brick, and answered that he knew of no other custom except for the contractors to take the old material, and make the best use of them they could *at their own expense*, where they were allowed to use them in the building. It is immaterial whether this was rightfully admitted or not, as there was nothing in the contract to show that the defendant was to clean the old bricks. It was work done for the plaintiffs' benefit, and it in no way affects the consideration of that question, whether the defendant or the plaintiffs were to take down the old walls, &c. They could clean and use the old bricks in the new construction if they wished to do so, but the defendant was under no obligation to get them cleaned for them.

The referee has found that the plastering was badly done in many places, that it was the result of careless work, being in some parts loose and ready to fall off; that the defendant had paid $591 to repair it, and that it would cost him more than $1,000 to repair the rest, and that then the work would not be as good as if it had been properly done at first.

For this he allowed the defendant $800, and for which he paid $591, making in all $1,391.

The difficulty in allowing the defendant this $1,391 is, that no claim for damages on this account is set up in the answer; the counter-claim in the answer being only for the liquidated damages of $50 a day for the failure to complete the building by the stipulated time.

If this $1,391 was allowed by way of recoupment, there are two objections:

1. That the right to recoup grows out of the contract, and is limited to reducing or extinguishing the claim made under it; that is, as the meaning of the word *recoupment* implies, which is of French origin, the defendant may have so much of the claim under the contract *cut off* as the cross damages may come to (*Ives* v. *Van Epps*, 22 Wend. 155); but cannot have an excess or balance found in his favor (*Sickels* v. *Pattison*, 14 Wend. 257). His remedy, if he wishes to claim to that extent, is to bring a separate action to recover damages for the non-performance of the contract; a difficulty, in respect to

recoupment, which is now remedied by the provision in the Code allowing a counter-claim.

The plastering, for the defective performance of which the referee allowed $1,391, was embraced in the written contract, and the referee having found that "the defendant paid on account of the written contract $41,000, leaving unpaid thereon but the sum of $300, any damages of the defendant arising under that contract could be recouped only to the extent of $300," (*Sickels* v. *Pattison, supra*), that being all that was due or that could be recovered under it.

2. But even this was not recoverable by way of recoupment, for to entitle a party to recoup damages, he must give notice, (*Trowbridge* v. *The Mayor, &c. of Albany*, 5 Hill, 71; s. c. 7 Id. 429; *Barber* v. *Rose*, 5 Hill, 81); and the only mode in which that notice can now be given under the Code is by way of answer (*Crane* v. *Hardman*, 4 E. D. Smith, 449). Indeed, what was formerly called recoupment, is now a counter-claim, expanded into a broader and more extensive remedy; for a counter-claim under the Code not only includes all that was formerly embraced by recoupment, but a great deal more. (*Vasser* v. *Livingston*, 13 N. Y. 256; *Pattison* v. *Richards*, 22 Barb. 146; *Gleason* v. *Moen*, 2 Duer, 642; *Bloodgood* v. *Ingoldsby*, 1 Hilt. 388.)

If the testimony in respect to the defective manner in which this work was done, &c., had been without objection, we might conform the pleadings to the proof. But when the interrogatory was put to the witness Bloodgood: "Have you examined the walls and plastering of the building?" the plaintiff specifically objected that this was not put in issue. The objection was overruled upon the ground that it was; and it certainly was, as the performance of the written contract was essential to entitle the plaintiffs to recover the $300 that remained of the contract price, (*Smith* v. *Brady*, 17 N. Y. 173); and to show that it was only in that point of view that the whole of this inquiry was gone into, the defendant's counsel stated that the defendant made no claim *for damages for insufficient work*, in that the evidence was offered only to show that the contract had not been fulfilled. When, therefore, the

referee, in his report, allowed the defendant $1,391 for *insufficient work*, it was giving the defendant what he had not asked for, and may well have taken the plaintiffs by surprise; $591 of this amount was allowed, as I have said, because the defendant had expended that sum in repairing the damage in part, and $800 more, because it would cost the defendant more than $1,000 to repair the rest. The allowance of the $1,391 was certainly erroneous; for conceding the fact to be as the referee must have found, that the special contract was not performed, from the imperfect manner in which the plastering was done, the only effect of it was to defeat the plaintiffs' claim for the $300 under that contract.

This allowance, therefore, must be reduced less the $300 by the defendant, or the report, for that reason alone, must be set aside. By the special contract, the basement was to be finished as a cellar, paved with cobble stones, or concreted, and the walls and ceiling whitewashed with two coats. The defendant afterwards had this changed.

He had the floor deepened, the walls and the ceiling finished with hard finish, and the cellar fitted up as a room. The plaintiffs' bill for plastering the side walls and ceiling of the cellar was $671.45. The referee has found that the walls and ceilings of the cellar were to be plastered, and this would seem to be included in the general provision for plastering in the specification.

All the plastering was to be three coated work throughout and hard finished; the exception being, that the walls and ceilings of the cellar were, by the specification, to be whitewashed. By the subsequent agreement, they were hard finished. The referee has found that the plaintiffs finished the third coat of plaster on the side walls and ceilings of the cellar. For the work done on the side walls he allowed as extra work less the cost of whitewashing, and the same for the ceiling, but found that the cost of the whitewashing of the whole, as originally contemplated, was equal to the cost of the third coat, and he deducted that amount of $499.20 from the plaintiffs' bill of $671.45.

I am unable, from the report or the testimony, to discover

how this was worked out, and the defendant's counsel, in his points, has in no way aided us. He does not even refer to it, although the objection was taken to the finding by the plaintiffs' exception, and it is specifically stated in his third point as one of the grounds for setting aside the report. The finding may be correct, but after a careful perusal of the whole of the testimony of this voluminous case, I find myself unable to determine whether it is or not.

The referee has deducted for twenty-one gas outlets or center pieces, that should have been put in, $48. This is also doubtful, the defendant having had gas introduced more extensively than was contemplated by the special contract, the charge may have been in effect an agreement to dispense with them. The drawings and plans, moreover, are not before us, and I am unable to say, from the specification, whether the plaintiffs' point is well taken or not, that the contract did not call for these center pieces, and the defendant has not aided us. I do not think that the referee was required to strike out items to which the defendant made no objection.

This applies to the disallowance in the plaintiff's bill for extra work of the item of $174.25 for extra sills and lintels in Barclay street. This bill, dated February, 1867, of $1,612.45, was examined by the defendant upon the trial, and he specifically distinguished and pointed out the items to which he objected, covering nearly one-half of the amount of the bill, and this item was not one of them.

The plaintiffs charged $132.41 for extra repairing after plumber and gas fitter. The whole of this was disallowed, upon the ground that it was covered by the special contract. By the contract, the plaintiff agreed to do all patching and repairing after other mechanics were through; but this, of course, had reference to what became necessary under the contract, and did not apply to patching and repairing which might arise from changes afterwards made by the defendant. Indeed, this construction was practically applied by the referee in reference to the repairing after the putting in of steam heaters, for which he allowed the plaintiffs $475, as extra work. It was in evidence that floor and ceilings had to be cut away in consequence

of alterations made for gas pipes, and there was plumbing work done not embraced in the special contract, consisting of water-closets and more than twelve additional wash-basins. Any patching or repairing consequent upon this was not embraced in the contract, and for this additional repairing the plaintiffs were certainly entitled to be allowed something. Unless the parties can agree upon a reduction in the matter in which the findings of the referee do not appear to us to be satisfactory, no other course can be pursued except to reverse the judgment of the referee.

Ordered accordingly.