## 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐 𝕸𝖆𝖗𝖎𝖓𝖊 𝕮𝖔𝖚𝖗𝖙.

### *General Term—October*, 1876.

## LILLIAN L. RATHBUN, ET AL. *against* HORACE WATERS, ET AL.

Conditional sales upon the installment plan, wherein the title is not to pass until the goods are fully paid for, upheld, and their conditions enforced.

What amounts to a waiver of the conditions, and the distinction in law between waiver before and after breach, considered.

McADAM, J.—The plaintiffs sue in trover for the conversion of a piano, upon a complaint containing the usual allegations of ownership and possession in them, which, after charging the wrongful taking and conversion of the piano, by the defendants, allege in the *ad damnum* that "by means whereof, the said plaintiffs have lost the piano, and have been damaged to the amount of the value thereof, to wit $375." Upon the trial it appeared that one George W. Rathbun, under date of September 19, 1872, entered into a written contract with the defendant Horace Waters, in three separate parts—one executed by Rathbun and the others by Waters. These various writings are to be construed as parts of one contract (Cornell *v.* Todd, 2 *Den.* 130 ; Rawson *v.* Lampman, 5 *N. Y.* 456). In the first writing, which is signed by Rathbun, he acknowledges that he has received from Waters, a seven-and-one-fourth-octave piano, numbered 4,133, of the value of $375, for the use of which he agrees to pay Waters at his store the sum of nine dollars per month in advance, and he also agrees to the following conditions. First, that the hiring shall continue until Rathbun returns the piano to Waters, or until he retakes

Rathbun v. Waters.

the same, which he is authorized to do at any time, provided rent paid therefor, for time not then expired (if any) be refunded ; which, by way of illustration, is equivalent to saying that if Rathbun paid upon the piano a sum equal to four months' rent, that the piano could not be taken by Waters, until the four months had expired, unless he first refunded to Rathbun the amount of rent unearned at the time. Rathbun also agrees to keep the piano insured for the benefit of Waters, and in case of fire to assign the insurance to him, and stipulates not to allow the piano to be removed from No. 87 India street, Greenpoint, without the written consent of Waters.

In the second writing, which is signed by Waters, the rental of the piano is referred to with a "Whereas," or preamble, reciting that the hirer desires hereafter to purchase the said instrument, "and agreeing, that in case the hirer paid to him at his store, the sum of $200 on the delivery of the agreement, $75 on the 19th day of December, 1872, and $100 on the 19th day of March, 1873, he would, at the time of the last payment, execute and deliver to Rathbun a good and sufficient bill of sale of the piano, receipted in full. This writing also contains the following provisions :

"But it is hereby understood and agreed, that should he make default in any of said payments, then I may, at my option, consider all of said payments which have then been made, as made on account of the rent of said instrument, at the rate of $9 per month, as provided in said agreement signed by said hirer, and for the whole time during which said instrument has been in his possession. I further agree to allow the said instrument to remain in the possession of the said hirer, so long as he shall promptly pay to me the sum above mentioned, and fully comply with all the conditions and agreements mentioned in the said agreement signed by him. It is distinctly understood and agreed, that this is

not, and is not intended to be a sale of the said instrument, but only an agreement for a future sale thereof, and that, until the price of the said instrument shall be fully paid as above provided, and a bill of sale thereof duly executed and delivered by me, the title to the said instrument shall continue to be in me, and not in the said hirer."

The third writing, which is signed by Waters, is but a condensed statement of the second, with the principal conditions omitted. It is in these words:

"I hereby agree that if Geo. W. Rathbun shall pay to me the sums hereafter named, at 481 Broadway, N. Y., on the dates specified, to deliver to him at the time of the last payment, March 19th, 1873, a sufficient bill of sale, receipted in full, of piano No. 4133, made by Horace Waters, valued at $375, which I have this day rented to him at $9 per month, and that I will charge nothing for rent of said piano, except in case of his forfeiture of any part of this agreement.

| "Sept. 19, 1872, | . | . | . | . | $200.00 |
| Dec. 19, " | . | . | . | . | 75.00 |
| Mar. 19, 1873, | . | . | . | . | 100.00 |
| | | | | | $375.00 " |

George W. Rathbun, the party of that name mentioned in the contract, has departed this life, and prior to his death, executed an assignment of all his interest in the piano to his wife (now widow) and to his children, for whom it was by him originally intended, and the present action is brought in their names, as plaintiffs.

They represent whatever right or title he had in the piano, under the contracts before referred to.

It will have been observed, from the peculiar conditions of the contract, that Rathbun received possession of the piano on what is commonly known as a time contract, upon the conditional sale, or installment plan.

Rathbun v. Waters.

This is a system of recent growth, quite prevalent in large cities, and is patronized chiefly by people of limited means, who are by it enabled to obtain, without ready money, the possession and use of whatever household goods they require, with what may be termed an *inchoate* right of ownership therein, to mature into an indefeasible title upon payment of certain installments at specified times.

The conditions generally imposed, are that if default be made by the proposed purchaser, in the payment of the installments or in the performance of the conditions, at the times and in the manner specified, the title of the original owner is not only preserved unimpaired, but his right to the immediate possession is *ipso facto* restored. If the proposed purchaser, therefore, retains the property after such default, he has but a bare possession, without right, at the sufferance of the owner, who may at once resume possession in any lawful manner.

These contracts, variously drawn, have been declared lawful by the courts, as well as by learned textwriters (Herring v. Hoppick, 15 *N. Y.* 409 ; Westcott v. Thompson, 18 *Id.* 363 ; Hasbrouck v. Lonsberry, 26 *Id.* 598 ; Ballard v. Burgett, 40 *Id.* 314 ; Austin v. Dye, 46 *Id.* 500 ; Cole v. Mann, 62 *Id.* 1 ; Powell v. Preston, 3 *Thomp. & C.* 644 ; Strong v. Taylor, 2 *Hill*, 326 ; Houston v. Dyche, 1 *Meigs*, 76 ; Wood v. Burroughs, 2 *Head*, 202 ; *Story on Sales*, § 400 ; *Hilliard on Sales*, p. 31). The principle laid down in these authorities must be applied, therefore, as far as applicable to the peculiar facts of the present case. The case disclosed three defaults upon the part of Rathbun. 1st. Failure to pay the second and third installments at the time specified. 2nd. Failure to keep the piano insured. 3rd. Removing the piano from 87 India street to the Choral Union, without the written permission of Waters. The plaintiffs seek to avoid the effect of the

first default,—*i. e.*, failure to pay the second and third installments,—upon the ground that by applying the first installment paid—$200—on account of rent of the piano, according to the provisions of the contract, about one month's rent was unearned at the time the piano was taken, and that, as the defendants made no offer to refund the amount, according to the requirements of the contract, at the time of the taking, that it was upon that account unlawful.

Assuming this to be so, the damages recovered were excessive, and the principle upon which the jury allowed them wrong.

The unearned rental, at the time of the taking, amounted to $6.00, according to the defendants' figuring, and does not exceed $36.90 under any circumstances, and yet the jury rendered a verdict for $187.50.

The trial judge told them that they were to give the plaintiff such an amount as will compensate her for the *inconvenience*, and the violation done to her rights in taking the piano from her, without authority of the contract existing between them, and told them that they were to see to it that the amount of damages will fully compensate her for the injury done to her rights, and also for the trouble she has been put to in this case in vindicating them, and securing redress for the injuries done to her by such a trespass. He also told them that he must treat the matter as the law treats it, —as a trespass, a violation of right without the authority of law.

The jury, in awarding the $187.50 to the plaintiffs, have, therefore, presumably allowed it for the inconvenience the plaintiffs were put to, for the injury done to their rights, and for the trouble they were put to in vindicating them, and securing redress for such a trespass. The *ad damnum* clause of the complaint asks

for $375,—*the value of the piano*,—and the recovery seems to have been for everything else. The action was in trover for the conversion of the piano,—not against a stranger without title, but against persons having title ; and if the plaintiffs were entitled to recover at all in that form of action, it was only for the value of their interest in the piano at the time it was taken, and this, as before remarked, could not exceed, at most, $36.90.

In Hickok *v.* Buck (22 *Vt.* 149), it appeared that the defendant leased the plaintiffs a farm for a year, and was to provide a horse to use on the farm during the term. He furnished one, but afterwards took it away and sold it, and the court held that the plaintiff had acquired a special property in the horse, and could maintain trover ; but the damages were limited to the value of the use during the residue of the term. There is no evidence in this case showing that the value of the use of the piano for the residue of the term exceeded the sum before named. At law, time is regarded as of the essence of the contract (although in equity the rule is otherwise), and the installments not having been paid at the specified times required by the contract the plaintiffs lost the opportunity of perfecting their title (see *Chitty on Contracts*, 11 Am. Ed. 433 ; Friess *v.* Rider, 24 *N. Y.* 367 ; Pachin *v.* Pierce, 12 *Wend.* 60).

The plaintiffs also seek to remove the effect of the second and third defaults, by alleging waiver of the right to object, but I can discover nothing in the case which warrants the legal inference of waiver. Whatever occurred between the parties which could by any possibility be construed into a waiver, took place after the defaults were suffered, and they were not waived by any inconsistent act of the defendants, or by any valid agreement.

In Shute *v.* Hamilton (3 *Daly*, 471), the learned

chief justice of the court of common pleas, writing the opinion of that court in regard to an alleged waiver under a builder's contract, said : " The acts here relied upon as amounting to a waiver, took place after the plaintiff's failure to complete the building within the specified time ; and in respect to the waiver of such a condition or of all claims for damages under it, there is a very material distinction between a party's acts before and after the breach of a condition ; for after a breach, as a general rule, there is no waiver of the claim for damages, unless by the making of a new agreement." In regard to the failure to continue the insurance, the court of appeals, in Palmer v. Kelly (56 N. Y. 637), per JOHNSON, J. (writing the opinion of the court), said of a like condition in a similar contract :

"One of the terms of the contract was that the plaintiff should keep the goods insured, the loss to be payable to the owner of the property. This the plaintiff proved he did not do. The defendant had, therefore, a right to retake the goods at any time, for this failure to perform by the plaintiff. The defendant requested the judge to charge that the plaintiff not having insured the goods as called for by the contract, violated it, and the defendant had a right to elect to consider it annulled, and to take possession of his property. The court refused to charge further or other than had been charged, and the defendant excepted. The court in the charge had submitted to the jury the question whether the defendant had waived his right in that respect. But there was no proof of waiver, nor even of knowledge, on the defendant's part, that no insurance had been effected. It was not warrantable to submit such a question to the jury with no evidence upon it tending to show a waiver. It was equivalent to telling the jury they might find against the defendant if they pleased. The defendant was entitled to have this request complied with, for, as we have seen, the contract

for insurance applied to these goods, and had neither been fulfilled nor waived.''

I have cited largely from this opinion, because it is not printed in the report of the case, which presents a mere memorandum of the question presented, and the result or decision upon it.

Under all the circumstances it appears clear to me that if the plaintiffs are to recover at all in the present form of action, that their recovery must be limited to the unearned rent of the piano, or to the value of its use for the unearned period, if that exceeds the rent. It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to abide the event.

