R. S. Guernsey, Esq., Referee.
There was some conflict of' evidence as to the value of the material taken out of those houses, but I have regarded it mainly as a question of law. It not being mentioned in the written contract, it might well be questioned whether any evidence should have been allowed upon the subject, as the contract covered the matter, although set up by the owners as a counter-claim and recoupment against the contractor and those claiming under her. I have disposed of it by the finding of fact as to the value of those two houses and their use by Jones, the contractor, and the conclusion of law upon the' contract that the owners are not entitled to be allowed the value thereof as a counter-claim or deduction from the contract price for the erection of the new building. In other words, under the building contract, which did not mention these houses or the use of the materials in them, Jones became the owner of the materials upon taking possession and removing them, and could use them whenever and wherever she chose, either in the new building or elsewhere. The only question the owners can raise was—were the materials of good quality and condition to fulfill the terms of the building contract %
These two houses were standing upon the land at *360 the time of the making of this contract, and when the contractor took possession to commence work. It is a long-recognized principle of law that all contracts relating to real estate, and dealings with it, are presumed to be made with reference to the visible condition of it. The rule of caveat emptor applies the same as to personal property (Canaday v. Stiger, 55 N. Y. 452; Gwilhim v. Stone, 3 Taunt. 439 ; Long v. Warren, 68 N. Y. 426).
This is so in regard to physical incumbrances, boundaries-, watercourses, highways, surface, soil, location, surroundings, fixtures, &c. (See Long v. Warren, 68 N. Y. 426).
In the absence of fraud or special contract they all follow the realty, “for better or for worse,” running with the land as fixtures, without any special mention or exception. A building contract is governed by the same rule in regard to the condition of the property, and the disposition, use and furnishing of the materials and the preparation of it for the contract (Shute v. Hamilton, 3 Daly, 462). If the owners of the land had the right to the materials in the two houses, in this case it was waived by leaving them until the contractor took possession under her contract. Had the owners removed them before this, a different question would be presented. They were obstructions to Jones in the progress of the contract,, and she must remove them, whether to her benefit or otherwise. If they were high rocks instead of houses they must still be removed by the contractor, and it would be absurd to claim that the contractor could properly charge extra for such removal.
In this case each side claimed that the custom in regard to ownership was in their favor in such instances, and offered evidence to that effect, which was excluded. I think the question of custom cannot properly arise here, where there is an express and *361 plain written contract between the parties which relates to the subject matter. Evidence of custom or usage may be given to explain a written contract, but not to alter or change its plain terms or be inconsistent with it (Whart. Evi. §§ 958, 960, 961, 969, 970). Custom has not the same force in America as in England under the common law.
I have riot been able to find any decision directly in point on this question of ownership in any of the English or American reports, but I believe the doctrine is sound upon the recognized principles above stated.
Many of the claimants who are parties defendants and sub-contractors appeared at an early stage of this action and proved their claims, and then left the main contest of the issues which the owners set up as to payment, bad workmanship, defective materials, no extra work, and counter-claims for stipulated damages under the contract for delay, and the value of the materials taken out of the old buildings, and that nothing was due the contractor, and other deductions, which if allowed against the contractor would defeat the lienors. A few of the lienors persevered in this action, and two of them were settled with (their claims being purchased by the owners) and withdrew just before the case was closed, and only two continued the contest until the end. The contractor did not file any notice of lien, but appeared in aid of the claimants. All of those who, after appearance, allowed their liens to expire during the pendency of this action without an order of the court continuing them, as provided by the statute (act 1863, § 11), should be dismissed as to the owners with costs as for want of prosecution, they having actually abandoned their proceedings against the owners (Schacttler v. Gardiner, 41 How. Pr. 243 ; Huxford v. Bogardus, 40 Id. 94; O’Donnell v. Rosenberg, 14 Abb. Pr. N. S. 59). Such claimants are entitled to a judgment against the contractor, however, for *362 the amount of their claim (Grogan v. McMahon, 4 E. D. Smith, 754), and costs as upon failure to answer, because the contractor did not object to their claims. The lienors did not contest among themselves.
If for any canse a party wishes to withdraw his claim, he should apply to the court, which has the power to relieve him without costs in a proper case (De Barante v. Deyermand, 41 N. Y. 355).
A referee has the same power as a court in allowing costs as between the parties, where all the issues are referred (Barker v. White, 1 Abb. Ct. App. Dec. 95 ; Code, § 1022). Some claimants who did not appear and prove their claims should be dismissed as to all parties without costs, because they took no part in the action, except nominally.
Where there are several liens, each should be fully proved, because it may prejudice the rights of subsequent lienors. The owners and contractor cannot alone in such case admit the validity of the lien so as to affect others.
The claimants whose liens are established should have costs of this action against the owners, who alone contested them (Doughty v. Devlin, 1 E. D. Smith, 625 ; Dunning v. Clark, 2 Id. 535 ; Eagleson v. Clark, Id. 644), and costs as on failure to answer as against the contractor. The costs against an owner are chargeable against the property, and may constitute a specific lien thereon (Ib.; Althause v. Warren, 2 E. D. Smith, 657).
The two defendants who signed the Jones contract as trustees of Marietta R. Stevens, under the will of Paran Stevens, deceased, are personally liable for the amount due Jones on the contract, it being regarded as a personal contract with them, and not binding on the Stevens estate (Austin v. Munro, 47 N. Y. 360; New v. Nicholl, 73 N. Y. 127).
The contract contained a clause for stipulated *363 damages at $100 a day for each day after a specified date, when the building was to be completed notwithstanding extra work thereon. The building was not completed at the specified time, and the owner claimed that the damage up to the time of the completion of the contract, at the stipulated rate per day, should be deducted from the amount that remained unpaid to the contractor under the contract, or for extra work (Shute v. Hamilton, 3 Daly, 642).
This contract, as to stipulated damages, was binding upon the sub-contractors (O’Donnell v. Rosenberg, 14 Abb. Pr. N. S. 59).
The rights of sub-contractors are subject to all equities between the owners and contractors in these cases.
It was proved that there were alterations and changes made from the plans and specifications upon which this written contract was based, and that there was also other extra work done from time to time in the progress of the building. The building, as completed, reasonably took longer time than that called for in the contract. The owners waived the stipulated damage clause by requiring the changes to be made (Shute v. Hamilton, 3 Daly, 462). The owners also had the right to complete the contract and charge the expense thereof to the contractor in case of delay or abandonment of the work. This latter clause should also be taken into consideration in such cases, as to the owners’ delay in assuming the completion of the building. It was claimed, on the part of the owners, that as the liens of the sub-contracts were for work required to be done by the written contract, that if there was anything due Jones for extra work, as was claimed, it could not be reached by such lienors. If the evidence showed that the owners had paid the contractors in full for all done under the contract before the filing of the liens, the lienors would not then be entitled to recover. The *364 extra work must be shown to be upon another independent contract, to which the lienors did not contribute anything, and the payments must have been specially applied to the contract under which the lienors did work, &c., in order to defeat their liens.
Where the extra work, as in this case, consists of and is a part of the completion of the original contract, any additional amount due from the owners to the contractor, in consequence of the extra work, may be reached by the sub-contractors, the same as if it became due under the terms of the original contract.
In this case, the payments made were not specially applied upon any specific work, but were on general account (the owners claimed that there was no extra work done by the contractor which entitled her to be paid more than the contract price). Under these circumstances, the sub contractors are entitled to reach the sum due for the extra work, although they did not specially contribute toward it. ■
It must be regarded as due from the owners on the original contract, toward which the lienors unquestionably contributed.
The settlement with the owners, and consequent withdrawal of some of the lienors near the close, did not prejudice any other lienors, although one of them who settled was sole plaintiff and commenced the proceedings. Each lienor is independent of any other, so far as enforcing his own lien is concerned (Abham v. Boyd, 5 Daly, 321). The contractor’s claims on the contract and for extra work were many thousand dollars more than the aggregate claimed by the lienors.
By the contractor’s hot filing any notice of lien and pleading in the nature of a cross-action against the owners, her personal claim against the owners can here be considered only so far as it may affect the lienors whose claims are finally established. The contractor cannot in this proceeding have a personal judgment *365 against the owners for the excess over and above the valid liens, although all the issues and the rights of the parties herein were referred to me to hear, try and determine. It was not an issue herein, and there is now no jurisdiction in this reference to determine the amount due the contractor above the valid liens.
If the excess due the contractor should be definitely stated, in such a case it would be of no avail to either party for any purpose, being a mere obiter dictum. The contractor must now bring a separate action to determine the amount due her from the owners. This result as to her must be regretted, because from the evidence in this case it can all be ascertained and determined now.
A decree in accordance with referee’s report must be drawn up, and should include all the separate judgments and costs and allowances, for and against the respective parties, and the practice is'to have it settled by the referee who tried the issues, with or without notice, in his discretion, and his approval thereof indorsed upon it, and then it is entered by direction of a judge (who may then designate the person to sell) (Gauhn v. Mills, 2 Abb. New Cas. 114), or by the clerk of the court, as provided by the Code of Civil Procedure, section 1228.
When the judgment gives special relief, it must be entered by direction of a judge, the same as formerly. In all cases it should be entered in form as done byauthority of the court, with the usual caption in such cases. There may be separate executions upon this judgment (Code, § 1374).
If no person is named as referee to sell, an execution, directed to the sheriff for that purpose, must be issued against the specific property (Suydam v. Holden, 11 Abb. Pr. N. S. 329).
There must be as many separate sales of the owners’ interest in the property as there are liens established, *366 for they attached at different times, and the owners’ interest may have varied, and incumbrances may have intervened.
It is still the contractor’s interest and right to see that the sales are properly made, and to obtain the best price, and that the personal judgments against the owners for a deficiency are efficiently enforced (see McLean v. Tompkins, 18 Abb. Pr. 24), for the contractor is also liable for the amount of the judgment (excepting the costs of this litigation on the part of the owners), and must pay it if it is not collected out of the property or from the owners. If the contractor pays it first she can then enforce this judgment for her own benefit.
The decree may be settled by the court (Chamberlain v. Dempsey, 36 N. Y. 144), and may be entered without notice. If it is not in accordance with the referee’s report it must be corrected on motion (Campbell v. Seaman, 63 N. Y. 568). An appeal on such questions is not the proper remedy, until after hearing the parties on the motion (People v. Goff, 52 N. Y. 434; and see Coope v. Bowles, 18 Abb. Pr. 442).
Judgment was entered upon the referee’s report, Novembér 30, 1878.
The defendant Stevens appealed, but afterwards settled with claimants and withdrew the appeal.